64 552
103 210
104 311
64 552
51a 327
64 552
55a 71
64 552
124 265
64 552
145 112
64 552
82a 171

MARY WHITE, Respondent, vs. JAMES G. MAXCY, Appellant.

1. *Damages—Action by widow under § 3 of the Damage Act for killing of husband—Petition—Reference to statute.*— Section three of the Damage Act (Wagn. Stat. 520) merely causes a right of action to survive where the deceased, had he lived, might have had his action for injuries at common law. And in suit by the widow, for the death of her husband, where the petition states facts which bring the case within the provisions of that act, no reference to the act is necessary.

2. *Damages—Self defense, right of, when cannot be invoked.*—The right of self defense, which justifies homicide, does not imply the right of attack. And the plea cannot avail in any case where the difficulty was induced by the act of the accused, in order to afford him an opportunity to wreak his malice.

3. *Evidence-Falsus in uno-Instruction, etc.*—A jury may disregard the testimony of any witness whom they believe to have wilfully sworn falsely concerning any material fact in issue. But an instruction to that effect should not be given except where some witness has given false testimony; and on that point the trial court is best qualified to pass.

4. *Evidence of marriage, what sufficient.*—The testimony of a widow that the deceased was her husband, and that they had lived·together seventeen years, was held amply sufficient to establish the fact of their marriage.

5. *Civil action for homicide—Danger of bodily harm—Opinion of witness.*—In an action of damages for homicide, the question asked of defendant, whether he apprehended that deceased would inflict on him any great bodily harm, was held properly excluded. His opinion on that subject was of no importance and was not legitimate evidence. (Wagn. Stat. 446, § 4.)

*Appeal from Miller County Circuit Court.*

*Lay & Belch,* for Appellant, cited: Wagn. Stat. 1020, § 41; Walther vs. Warner, 26 Mo. 146, 147; 1 Chit. Pl. p. 405; 2 Chit. Pl. pp. 494, 495; 1 Chit. Pl. pp. 387, 388; 16 Mass. 22; Kennayde vs. Pacific R. R., 45 Mo. 255; 1 Hempst. 238; Steel vs. Steel, 1 Nev. 27; Mitchell vs. Chaps, 12 Cush. 278; 13 Pick. 94.

*Ewing & Smith, with Rollins,* for Respondent, cited: Wagn. Stat. 520, § 3; Kennayde vs. P. R. R., 45 Mo. 255; State vs. Patton, 42 Mo. 530–537; Hewitt vs. Harvey, 46 Mo. 363; Reed vs. Inhabitants of Mertfield, 13 Pick. 94; McKeon vs. Citizens' R. R. Co., 42 Mo. 79; McDermott vs. Donnegan, 44 Mo. 85; Kennedy vs. N Mo. R. R. Co., 36 Mo. 351; Hoffman vs. Ackley, 34 Mo. 277; Turner vs. Loler, 34 Mo. 461;

Hunter vs. Miller, 36 Mo. 143 ; Orth vs. Dorschlein, 32 Mo. 366 ; Gullett vs. Hoynorton, 15 Mo. 400 ; Stephens vs. Bank of Missouri, 15 Mo. 143.

NAPTON, Judge, delivered the opinion of the court.

This suit originated in Pulaski county, but was removed to Miller county at the instance of defendant.    The petition in the case is as follows :

"Plaintiff states that she was the wife of Samuel White, late of the county of Pulaski, deceased ; that James G. Maxcy, of the county of Pulaski aforesaid, on the third day of April, A. D., 1873, with force of arms, did wrongfully shoot and mortally wound her husband, Samuel White, of which mortal wound her husband, Samuel White, on the fourth day of April, 1873, died ; that the defendant, James G. Maxcy, wrongfully shot and killed her husband with a pistol loaded with gunpowder and ball, which the defendant then and there in his hand had, held and shot off and discharged at and against the right side of her said husband, Samuel White, inflicting a mortal wound, of which said mortal wound her said husband, Samuel White, on the fourth day of April, 1873, died.    Plaintiff further states, that the death of her said husband, Samuel White, was caused by the wrongful act of the defendant James G. Maxcy, by the means and in the manner aforesaid."

"Plaintiff states that by the wrongful act and means aforesaid, done and used by the defendant, James G. Maxcy, by shooting and killing her said husband, Samuel White, she is damaged to the amount of five thousand dollars, for which she asks judgment."

To this petition there was a demurrer which was overruled, and the defendant filed an answer denying all the allegations of the petition, and affirmatively declared the facts to have been as follows :

"That at the time and place mentioned in the petition, the said Samuel White did, with two stones, one of the size and weight of two pounds, the other of the size and weight of four pounds, in and upon the body of the defendant, wilfully, unlaw-

fully and feloniously make an assault, with the intent, the said defendant, then and there to kill and murder; that the defendant was then and there, and thereby, placed in great danger; that the defendant, to defend himself and to save himself from great bodily harm, and to save his own life, did shoot the said Samuel White, using no more force or violence, and doing no more damage, than was necessary to defend himself and save himself from great bodily harm, which is the same shooting mentioned in the petition."

To this answer there was filed a replication denying the facts stated in the answer.

The case was tried at the April term, 1874, of the Miller county circuit court. There was a verdict in favor of the plaintiff, for three thousand dollars, and the usual motions for a new trial and in arrest of judgment.

It is unnecessary, to an examination of the questions presented for our decision, to give any details of the testimony. There is very little, if any, discrepancy among the witnesses as to the main facts, which appear to have been about as follows:

White and Maxey were neighbors. On the morning of the third of April, after breakfast, White went over to Maxey's to get a mule colt, which had strayed away, and was in Maxey's stable; and while there, a dispute arose about some rails. During this dispute very offensive language was used on both sides, and Maxey had a knife in his hands. White, being incensed at the epithets being bestowed on him, asked Maxey to lay down his knife, and, pulling off his coat, invited him to a fair fight. Maxey, then, declining the proposed combat, sent his son off to the house, which was distant about seventy yards from the place where this controversy arose, for his pistol, and whilst the boy was gone to the house, White picked up two stones and threw them at Maxey, who retreated and dodged them. White then mounted his horse and started for home, but Maxey, who had been previously retreating, meeting his son and getting the pistol from him, turned around and started after White, who was riding off on a stallion; whilst Maxey was thus pursuing White with a pistol in his hands, White got down from his horse, on the

side farthest from Maxcy, and stooped down, either with a view to pick up a rock, or as seems most probable, to avoid being shot. At all events, as the horse turned, so as to leave White's person exposed, Maxcy fired and killed him.

After the conclusion of the defendant's evidence, a motion was made, in the nature of a demurrer to the evidence, which again presented the question in regard to the sufficiency of the petition.

The instructions given by the court, at the instance of the plaintiff, were as follows:

1. "If the jury believe from the evidence, that the deceased, White, on or about the third day of April, 1873, went to the residence of the defendant, Maxcy, on hunt of a mule, and that whilst there, Maxcy, by his words and conduct, provoked White to offer to fight Maxcy if Maxcy would put up his knife, and that Maxcy sent his son to the house for his pistol, and that the said White afterwards called upon defendant to put up his knife and fight a fair fight, and that the defendant refused to put up his knife; that White picked up two stones, and that Maxcy retreated in the direction of his house, and that while so retreating White moved towards Maxcy and threw said stones at Maxcy with great force, and that one or both of them would have struck Maxcy had he not dodged the same, and that after White threw said stones, he turned toward his horse and got on him, preparatory to leaving, and that Maxcy, after the stones were thrown, proceeded towards his house till he met his son and obtained his pistol, and that said Maxcy, thereupon, returned with said pistol, and followed said White and shot him; then the said killing was wrongful, and the jury must find for the plaintiff, provided that they find that at the date of said killing plaintiff was the wife of deceased, even if they should further find from the evidence, that, as the defendant Maxcy approached White with his pistol, White stooped to pick up a rock, or that he did so pick up a rock, and the picking up or attempt to pick up the rock at such stage of the difficulty, was no justification for the shooting, and the jury must so decide."

2. "If the jury find for the plaintiff they will assess her damages at a sum not exceeding five thousand dollars."

3. "The right of self defense rests alone upon necessity, and does not imply the right of attack, and the plea of justification in self defense cannot avail in any case, when it appears that the difficulty was sought for or induced by the act of the defendant, in order to afford him a pretense for wreaking his malice. And if you find from the evidence, that the defendant, James G. Maxcy, and the deceased had a difficulty, which resulted in the death of the deceased, and that the defendant commenced the difficulty or brought it on by any wilful or unlawful act of his, or that he voluntarily, and of his own free will and inclination, entered into the difficulty, then there is no self-defense in the case, and you should not acquit on that ground ; and in that case it makes no difference how high the passion of the defendant may have arisen, nor how imminent the peril may have been in which the defendant was placed."

4. "It stands admitted by the pleadings in this case, that the defendant shot and killed the said White, at the time and place stated in the plaintiff's petition, and, therefore, if the jury shall find from the evidence that at the time of the death of said White, he was the husband of the plaintiff, then the jury must find for the plaintiff, and assess her damages at not exceeding five thousand dollars, unless the jury shall further believe from the evidence that such shooting and killing of said White by defendant was committed in resisting an attempt on the part of said White to murder defendant, or was committed in the lawful defense of defendant, when there was a reasonable cause to apprehend a design to commit a felony, or to do some great personal injury, and there was reasonable cause to apprehend immediate danger of such designs being accomplished."

The following instructions were also given for the defendant:

1. "It is the natural and legal right of every man to protect himself from the violence of others, and when it is necessary to protect his own life, or protect himself from great violence, he may do so, even to the extent of slaying his assailant."

2. "If the jury believe from the evidence that defendant Maxcy had reasonable cause to apprehend a design upon the part of White to kill him, Maxcy, or to do him some great personal

injury, and that there was reasonable cause to apprehend immediate danger of such design being accomplished, and Maxcy killed White in order to prevent White from killing him, or inflicting some great personal injury upon him, Maxcy, then the jury should find for the defendant."

4. "The jury are instructed that, in making up their verdict, they may take into consideration the physical power and ages of White and Maxcy, and their social relation to each other immediately prior to the difficulty ; and if they believe from the evidence that White made threats against Maxcy, and that such threats were communicated to him, what apprehensions, if any, they would likely produce on the mind of Maxcy, together with the other evidence in the case."

The following instructions, numbered three and five, asked for by the defendant, were refused :

3. "The jury are also instructed, that it is not necessary, in order to find for the defendant on the ground of self-defense, that the danger should have been real or actual, or that such danger should have been then impending and about to be inflicted on Maxcy. It is only necessary that the jury should believe that Maxcy had reasonable cause to apprehend that there was immediate danger of a design on the part of White to kill him, or do him great bodily harm, and that it was necessary for him, Maxcy, to kill White in order to prevent him from the execution of such design upon the defendant."

5. "If the jury believe from the evidence that any witness in this case swore wilfully falsely to any material fact in the cause, they are at liberty to disregard the whole testimony."

In the progress of the trial the plaintiff, Mrs. White, being on the stand as a witness, stated that White was her husband ; that they were married in North Carolina in 1857, and she produced a certificate of her marriage. The production of the certificate was objected to on the ground that the court could not take judicial notice that any such certificate was authorized by the State of North Carolina, and that there was no evidence to show that the party who solemnized the marriage was authorized so to do. The objections were overruled and an exception taken by

the defendant. The plaintiff also stated that her husband was thirty-six years old when he was killed, and that her family at that time consisted of herself and six children ; that her husband was a man of good health, and able to provide for his family ; that her oldest boy was sixteen years old at the time of the trial, and her youngest child was born on the fifth day of April, which was the day following the day on which her husband died.   Objections were made to all this evidence, and exceptions taken to its admission.

During the examination of the defendant as a witness, he was asked the question by his counsel, whether, at the time of the shooting, he really apprehended that unless he shot White he, White, would inflict some great bodily harm upon him, Maxey. This testimony was objected to, and the objection was sustained by the court, and exception taken to its exclusion.

The sufficiency of the petition is one of the principal questions that has been discussed in this case.   In the case of Kennayde vs. Pacific Railroad (45 Mo. 257) the same question arose on another section of the statute.   The petition in that case stated facts which brought the case within the second section of the Damage Act, but made no reference to the act.   In the present case facts are stated corresponding with those required by the third section of the same act.   Neither of these sections created any new cause of action, but provided for a survival of a cause of action which existed at the common law, where the death of the party injured occurred, to certain representatives of the deceased party, and limited the amount of the recovery to a specific sum.

The facts stated in this petition show that White, if living, could have maintained an action at common law against Maxcy for the injuries inflicted, but as at common law such actions would not survive, the facts stated are evidently based on the statute which provides for the survival of the action.

The cases of Hewitt vs. Harvey (46 Mo. 368) and Lowe vs. Harriman (8 Mo. 352) and Walther vs. Warner (26 Mo. 141), are not considered irreconcilable with the decision in Kennayde vs. Pacific R. R.   The former were actions for penalties claimed under special statutory provisions, and it was held that in such

cases there must be some reference made to the statute, in order that the court might see that such penalties were claimed. Without such statutory provision there could be no such claim made, but in the case of Kennayde and in the present case, which is precisely the same in principle, the statute gives a cause of action to parties who, by the common law, had no right to maintain such an action, and, as this court held in the Kennayde case there was no need of any special reference, or any reference at all to the statute, we are not disposed to reverse that opinion.

In regard to the instructions that were given by the court in this case, it will be observed that they are substantially the same as those sanctioned by this court in the cases of State vs. Shultz (25 Mo. 128), and State vs. Starr (38 Mo. 274). The undisputed facts in this case, we are inclined to think, required no instruction whatever on the subject of self-defense. Had the shooting occurred when *White* was throwing stones, and the defendant was retreating, the question of self-defense might have arisen, but the shooting occurred when White, unarmed, as the defendant knew him to be, was riding off, and the defendant was pursuing him with a loaded pistol. Self-defense, in such a state of facts, seems to be out of the question, and we think the court might very well have refused to give any instructions on the subject.

The fifth instruction asked by the defendant, to the effect that the jury might disregard the testimony of any witness who, in their opinion, had wilfully sworn falsely, was undoubtedly correct as an abstract proposition, but this court has never held that such an instruction should always be given under all circumstances. Such an instruction is always calculated to intimate that, in the opinion of the court trying the case, some of the witnesses had testified falsely, and the court presiding at the trial is better qualified than we are to determine the propriety of giving or refusing such an instruction. Upon reading over the record, we are unable to perceive any ground for asking the instruction in the present case. The refusal of the instruction could certainly not have done the defendant any harm, since the only testimony which exhibited the least disposition to distort the

facts, was that of the defendant himself and his son, and we will do him the justice to say that, on the whole, his account of the affair was a very candid one, considering his position and the strong inducements for him to represent the facts in a manner which would justify him. We cannot imagine why such an instruction was asked on the part of the defense, but we are of opinion that its refusal is no ground of error. · (Iron Mountain Bank vs. Murdock, 62 Mo. 70.)

The admission of the North Carolina certificate of marriage is, in our opinion, of no importance. The statement of Mrs. White that she was married to Mr. White in 1857, and that they had lived together ever since and had six children, was amply sufficient evidence of a marriage, unless there had been testimony offered to show that such cohabitation was illicit. The certificate was of no importance, and its rejection or admission was of no importance. It was sufficient that Mrs. White stated that White was her husband, and they had lived together for seventeen years. The evidence in regard to the age of her husband, his health, the number of her children, and their ages, we think was very material to enable the jury to estimate the damages occasioned by his killing.

The question propounded to the defendant, when on the stand as a witness, as to whether he really apprehended that, unless he shot White, he, White, would inflict some great bodily harm on him, Maxcy, was properly excluded. The answer to such a question would have been perfectly immaterial, and entitled to no weight whatever. The statute provides that a homicide shall be justifiable, "when there shall be reasonable cause to apprehend a design to commit a felony or to do some great personal injury, and there shall be reasonable cause to apprehend immediate danger of such design being accomplished." The question to be settled by the jury was, whether the defendant had reasonable cause to apprehend injury to his life or limb. It was a matter of no importance whether the defendant imagined himself to have reasonable cause to apprehend danger or not; his opinion about the matter was of no importance, and was not legitimate

evidence. It was for the jury to say, on the facts in evidence, whether the defendant had reasonable cause to apprehend danger to his life and limb, or not.

The judgment is affirmed. All the other judges concur.