## NICHOLS v. WINFREY, *Appellant.*

1. **Action for Homicide**: EVIDENCE OF DEFENDANT'S FEARS. In a civil action for the wrongful killing of plaintiff's husband, the defendant offered to testify what his apprehensions were when he fired the fatal shot. *Held*, not competent evidence.

2. **Self-Defense.** The accepted doctrine is, that when a person apprehends that some one is about to do him great bodily harm, and there is reasonable cause for believing the danger imminent that such design will be accomplished, he may safely act upon such appearances, and may even kill the assailant if that is necessary to avoid the apprehended danger; and the killing will be justifiable although it may afterward turn out that the appearances were false and there was in fact neither design to do him serious injury nor danger that it would be done. He must decide at his peril upon the force of circumstances in which he is placed, for that is a matter

which will be subject to judicial review. But he will not act at his peril of making that guilt if appearances prove false which would be innocent had they proved true.

3. **Action for Homicide**: BURDEN OF PROOF: SELF-DEFENSE. In a civil action for homicide the burden of proof is upon the plaintiff to show that the killing was wrongful. If it was done in self-defense that fact may be proven under the general issue; but if it is specially pleaded the burden still does not shift to the defendant.

4. **Instructions as to Burden of Proof.** Where the plaintiff himself has put in evidence the incidents of an occurrence from which the jury, within their province, might draw exculpatory inferences favorable to the defendant, it is error for the court to so instruct the jury as to convey a suggestion that the defendant must, by an additional weight of evidence, exonerate himself.

5. **Action for Homicide**: MEASURE OF DAMAGES. In a civil action for homicide the jury were instructed that in finding their verdict they were not restricted to the damages which were the necessary result of the killing, " but were free to consider all the circumstances." *Held*, that this carried with it the implication that the circumstances were aggravating; and where (as here) the evidence was of a mitigating character, it was error to give it; at least when not accompanied by any instruction as to the effect of mitigating circumstances.

6. ———— : ———— : MITIGATING AND AGGRAVATING CIRCUMSTANCES. It is the province and duty of the court to tell the jury what would constitute, under the evidence, mitigating or aggravating circumstances. They should not be allowed to indulge in conjecture on this point.

*Appeal from Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED.

*Kinley & Wallace, J. E. Wait* and *Waters & Winslow* for appellant.

*Chas. Hammond, A. W. Mullins* and *S. P. Huston* for respondent.

PHILIPS, C.—This action was begun by Josephine Steinbeck, as the widow of James Steinbeck, deceased, for the malicious, wrongful and unjustifiable killing of her said

35—79

husband in Chariton county on the 17th day of July, 1876. The plaintiff has since intermarried with W. H. Nichols. The answer contained a general denial, and then pleaded that the killing was done in the necessary defense of defendant's person, and in the defense of his house then occupied by defendant, after being assaulted therein by the deceased. The venue of the cause was transferred, at plaintiff's instance, to Livingston county, where, on trial before a jury, the plaintiff recovered judgment for $2,500, from which the defendant has appealed to this court. The controlling features of the evidence, as also the instructions to be reviewed, will appear in their proper connection in the course of this opinion.

I. While the defendant was testifying in his own behalf, the following question was propounded to him by his

1. ACTION FOR HOMICIDE: evidence of defendant's fears.

counsel: "You may state what your apprehensions were when you shot?" On the objection of plaintiff the court refused to allow the witness to answer this question. On the authority of the ruling in *White v. Maxcy*, 64 Mo. 560, the ruling of the circuit court was correct. This form of question is supposed to differ from an inquiry into the motive or intention of the party, which the authorities hold to be perfectly competent for a defendant to state in such actions. *State v. Banks*, 73 Mo. 592; *Vansickle v. Brown*, 68 Mo. 634; *Broad v. Ham*, 5 Bing. (N. C.) 722; *McKown v. Hunter*, 30 N. Y. 625; *Kerrains v. People*, 60 N. Y. 228, 229; Field on Dam. § 25.

II. The following instruction, given on behalf of plaintiff, is assigned for error: 3. "Although the jury

2. SELF-DEFENSE.

may find from the evidence that the plaintiff's husband, prior to the shooting mentioned in the pleadings, had been holding the defendant, and was, at the time the shot was fired, advancing or attempting to advance toward defendant; yet if the jury shall further believe from the evidence that the shooting and killing of the plaintiff's husband was unnecessary, and was the use of greater violence than the occasion required to protect himself at the

very time of the shooting, from any apprehended or any great violence of said deceased, then the jury must find for the plaintiff."

This instruction is not in accord with the recognized law of self-defense in this State, nor generally in the American states since the celebrated case of *Selfridge's Trial*. Without reviewing the numerous leading cases in which this matter has been so ably discussed, it is sufficient to say that the accepted doctrine is " when a person apprehends that some one is about to do him great bodily harm, and there is reasonable cause for believing the danger is imminent that such design will be accomplished, he may safely act upon such appearances, and may even kill the assailant if that is necessary to avoid the apprehended danger; and the killing will be justifiable, although it may afterward turn out that the appearances were false, and there was in fact neither design to do him serious injury nor danger that it would be done. He must decide at his peril upon the force of circumstances in which he is placed, for that is a matter which will be subject to judicial review. But he will not act at his peril of making that guilt if appearances prove false which would be innocent had they proved true." *State v. Sloan*, 47 Mo. 612; *Morgan v. Durfee*, 69 Mo. 477; *State v. Eaton*, 75 Mo. 591; *Pond v. People*, 8 Mich. 150; *Shorter v. People*, 2 Comst. 193.

The evidence pertinent to this point showed, substantially, that the deceased was a resolute man of unusual physical power, greatly superior to the defendant in strength. Without any apparent provocation, he assaulted the defendant in his own house, and held him within his arms, as in a vise, pressed against the wall, while the defendant was so overpowered by the mastery of his assailant that he could neither resist nor extricate himself. In the encounter the defendant's face was bruised or scratched, and his neck was so strained as to cause it to swell and stiffen. As evidence of the animus of the deceased, he said, while so holding the defendant, " Damn you, Winfrey, I have heard of you be-

fore, you have got hold of the wrong chicken." And as a proof of the fear which deceased had inspired in those who knew him, when the defendant called out to the bystanders to take the deceased off, and the town marshal summoned them to aid him in breaking his hold on defendant, they declined to interfere on the ground that they were not armed. When his hold was broken by the marshal, and the defendant ran behind his counter, the deceased, as if following him up, dragged the marshal along with him, and was a few feet from the defendant when he shot. It is not the province of the court to say what was the purpose of the deceased or what the real peril of the defendant. The deceased, as it afterward turned out, was not armed, but this fact does not appear to have been known by the defendant at the time of the homicide. With or without arms such a foe possessed immense capacity for inflicting great personal injury.

The defendant had the right, in defense of his person and for the proper and necessary assertion of dominion over his house, which for the time being was his "castle of defense," to act upon appearances. His responsibility to the law was only that, in the judgment of the triers of the fact, he should, at the time of the homicide, have had reasonable cause to apprehend imminent danger or great bodily harm ; and if he shot under such appearances, he is justified by the law no matter if, in fact, the danger was not real or imminent, or if less violent means might have availed for his protection. Authorities above cited. Yet this instruction told the jury that notwithstanding the deceased had been holding the defendant " and was, at the time the shot was fired, advancing or attempting to advance toward defendant," if the jury should conclude that, as a matter of fact, the killing was unnecessary and greater violence than the occasion required, the jury should find for the plaintiff. If this be law, then, as this court, through Wagner, J., said in State v. Sloan, supra, "a party must act at his peril of making that guilt if appearances prove false

which would be innocent had they proved true." Such is not the law of the land, and ought not to be.

III. The defendant complains of the fourth instruction conceded to the plaintiff, in which the jury were told **3. ACTION FOR HOMICIDE: burden of proof: self-defense.** "that before they can find for the defendant on the ground of self-defense, it devolves upon him to establish by a preponderance of the testimony that, at the time he shot and killed Steinbeck, Winfrey had reasonable cause to apprehend a design on the part of Steinbeck to do him some great personal injury, and had also reasonable cause to apprehend immediate danger of such design being accomplished."

It is unnecessary to the decision of the propriety of this instruction, as applied to the facts of this case, to pass on the question as to whether the burden of proof in this character of action rests throughout and to the same extent on the plaintiff, as it does on the prosecution in a criminal case. It may be affirmed that the prosecutor under the statute for the recovery of damages is not held to the establishment of the defendant's guilt beyond a reasonable doubt. He is only required to make out his case by a preponderance of evidence to the satisfaction of the jury.

The allegation of the petition is that the defendant, "with force and arms, violently, maliciously, unlawfully and wrongfully, without any just cause, did shoot the said James Steinbeck." The answer denied generally the allegations of the petition, and then in the form of new matter pleaded that the act was done in self-defense and in defense of defendant's house, in which he was unjustifiably being assaulted by the deceased. This apparently new matter, however, was in legal effect embraced in the general denial, and would have been admissible in evidence thereunder. These matters too were covered by the averments of the petition. To maintain the issues on plaintiff's part she could not have stopped in her evidence by merely proving that defendant shot and killed her husband; for by the terms of the statute under which she sought to recover,

the killing must have been wrongful, and the allegations of the petition were that the killing was malicious, wrongful and without just cause.

The obligation to prove the facts essential to the right of recovery lies upon the party "who substantially asserts the affirmative of the issue." Greenleaf Ev., § 74. The burden of proof is fixed at the inception of the trial "by the nature of the allegations of the pleadings, and it is settled as a question of law and does not change during the course of the trial." Note a and authority cited, *supra*. In *Powers v. Russell*, 13 Pick. 69, 76, Shaw, C. J., gives a most lucid and succinct statement of the rule : Where the proof on both sides applies to one and the same issue or proposition of fact, the party whose case requires the establishment of such fact has all along the burden of proof, although the weight in either scale may at times preponderate. But where he gives *prima facie* evidence of such fact, and the adverse party, instead of producing proof to negative the same fact, proposes to show another and distinct proposition which avoids the effect of it, there the burden of proof shifts.

The presumption of law, which is always in favor of innocence, is that the defendant in this case is innocent of the wrong charged, and this presumption is so far maintained that when the allegations of the petition take a negative form the burden of proof still rests on the party making the allegation ; (1 Greenleaf Ev., § 80,) or as Taylor in his treatise on evidence, section 365, puts it : Examine what would be the effect of striking out of the record the allegation to be proved, bearing in mind that the onus must lie on whichever party would fail if this step were pursued.

The application of the rule as expounded by C. J. Shaw, *supra*, will show the impropriety of the instruction in question, when it is borne in mind that the facts on which the defendant could base his claim of self-defense were mainly disclosed by the plaintiff in developing her own case. They were so inseparably interwoven in the

circumstances and incidents of the homicide as not only to
constitute part of the *res gestae*, but were included within
the plaintiff's proofs descriptive of the offense itself.   The
additional facts developed by defendant presented no new
or extraneous matter, but were particulars and incidents of
the same character, both as to time and place, as that estab-
lished by the plaintiff.   There was, therefore, no shifting
of the burden of proof.

The instruction telling the jury that before they could
find for the defendant on the ground of self-defense, it de-
4. INSTRUCTIONS AS volved on him to establish by a preponder-
TO BURDEN OF
PROOF.                       ance of the testimony the existence of the
apprehended design and impending danger, was not only
misleading in its tendency, but might not unreasonably
have been construed by the jury as an intimation from the
court that the facts disclosed by the defendant were not
sufficient to justify a verdict of acquittal.   In *White v.
Maxcy*, 64 Mo. 559, Napton, J., held that it was improper
for the trial court to give an instruction advising the jury
they might disregard the testimony of any witness who in
their opinion had sworn falsely, where the evidence did not
warrant it, because "such an instruction is always calcu-
lated to intimate that in the opinion of the court some of
the witnesses had sworn falsely."   So, the converse of this
proposition must hold good, that where the plaintiff him-
self has put in evidence the incidents of an occurrence
from which the jury, within their province, might draw
exculpatory inferences favorable to the defendant, it is error
for the court to so instruct the jury as to convey a sugges-
tion that the defendant must by an additional weight of
evidence exonerate himself.   It is sufficient in a case like
this to warrant a verdict for the defendant if it appear sat-
isfactorily to the jury from the whole evidence that the
killing was justifiable.

IV.   The following instruction as to the measure of
damages is also assigned for error:   5. "If the jury find

5. ACTION FOR HOM- for the plaintiff they will allow such dam-
ICIDE: measure of
damages.          ages as they may deem fair and just, not
exceeding $5,000, with reference to the necessary injury re-
sulting to the plaintiff from the death of her husband, and
they are not restricted to such damages as are the necessary
and inevitable result of the killing, but are also free to con-
sider all the circumstances of the killing as detailed in evi-
dence."

The section of the statute fixing the measure of dam-
ages is as follows: "In every such action the jury may
give such damages as they may deem fair and just, not ex-
ceeding $5,000, with reference to the necessary injury re-
sulting from such death to the surviving parties who may
be entitled to sue, and having regard to the mitigating or
aggravating circumstances attending such wrongful act,
neglect or default." R. S. 1879, § 2123. It is apparent
from the correct reading of this section that the damages,
with $5,000 as the maximum, which the jury may award,
are limited to what is just and fair, with reference to the
necessary injury resulting to the plaintiff from the death,
but the amount may or may not exceed this compensatory
sum, according to the mitigating or aggravating circum-
stances attending such wrongful act. Unquestionably,
therefore, if the circumstances of the homicide are of a
mitigating character, the damages recoverable are restricted
to the necessary injury resulting therefrom to the survivor,
without any exemplary damages; but if the circumstances
are of an aggravating character, the jury are not held to
the mere pecuniary injury, but may give punitive damages.
*Morgan v. Durfee*, 69 Mo. 478, and authorities cited; *Joice
v. Branson*, 73 Mo. 28.

This instruction, in directing the jury that they were
not restricted to the damages which were the necessary re-
sult of the killing, but were "free to consider all the cir-
cumstances" carried with it the implication that the circum-
stances were aggravating. To say the least, when the
court, on the state of evidence disclosed by this record, in-

Nichols v. Winfrey.

structed on the latter branch of the measuré of damages, it should have followed the statute and instructed as to mitigating as well as aggravating circumstances. Cases last cited; *Birchard v. Booth*, 4 Wis. 76, 77; Cooley on Torts, 694.

Nor was it proper, as was done in this case, to direct the jury that they might take into consideration the circumstances in awarding damages. It is the province and duty of the court to tell the jury what would constitute, under the evidence, mitigating or aggravating circumstances, leaving the jury to find the facts. They should not be allowed to indulge in mere conjecture as to what would constitute mitigation or aggravation. That is a question of law. *Joice v. Branson, supra; Rains v. Railroad Co.*, 71 Mo. 169; *Owen v. Brockschmidt*, 54 Mo. 289.

6. ——: ——: mitigating and aggravating circumstances.

It is difficult to perceive that under the facts of this record it is a proper case for aggravated damages. Plaintiff's counsel seem to think that as the deceased obtained the liquor, which inflamed his passions, at defendant's saloon, the defendant was primarily answerable for the trouble resulting in the homicide. It is true the evidence does show the deceased had through the day drank to excess. Whether he obtained all the wine he drank at defendant's saloon does not affirmatively appear from the evidence. Be that as it may, the courts cannot deal with questions of mere casuistry and pass on the morality or immorality of defendant's vocation. The presumption of law is, that his business as a saloon keeper was licensed by the State; and in the legitimate pursuit of a calling which the law permits, he was in the peace of the State and entitled to the protection of its laws, both as to the safety of his person and the right to protect his dominion over his own house. The free agency of the deceased was not taken away, nor does the law excuse his breach of the peace or his trespass on account of his drunkenness.

The evidence tends to show that when the defendant

discovered that the deceased was getting under the influence of drink, he declined to let him have more, and requested his friends to take him home. When this failed, in order to induce him to leave, the defendant proposed to treat to the drinks and cigars if the deceased would go. This proposition was ostensibly accepted and the treats given. The deceased proposed a toast of the most vulgar character, and when remonstrated with by defendant on the ground that they were within the hearing of ladies just across the alley, he replied by an allusion to defendant's wife too obscene for insertion in this opinion. The defendant furnished the highest evidence of his good disposition in refraining from assaulting and forcibly ejecting if possible the deceased from his premises. The party then withdrew, but the deceased soon returned and without provocation made the assault on defendant as hereinbefore detailed. True, it is a question of fact for the jury as to whether, at the time of the shooting, there was reasonable ground to apprehend danger, but the attending circumstances of an aggravating character were altogether on the part of the deceased. When the defendant shot, he had just been forcibly extricated from the grasp of the deceased, was smarting under his abuse and punishment, and fired while the deceased was apparently struggling to renew the encounter. The circumstances of the shooting were certainly mitigating under the plaintiff's testimony, and whether wholly justifiable, is a question for the jury under proper instructions.

The judgment of the circuit court is reversed, and the cause remanded to be further proceeded with in conformity with this opinion. All concur.

RAY, J., having been of counsel, took no part in the decision of this case.