NANCY A. GRAY, Respondent, v. WILLIAM G. McDONALD, Appellant.

Kansas City Court of Appeals, January 9, 1888.

28a 477
31a 420
28 477
86 216
28 477
93 4156

1. DAMAGES WHERE DEATH ENSUES FROM WRONGFUL ACT—CONSTRUCTION OF SECTION 2122, REVISED STATUTES.—The liability to action for damages, created by section 2122, Revised Statutes (in cases where death ensues from the wrongful act, neglect, or default of another), is based upon the act, etc., being wrongful. And the right of recovery by the designated survivor is limited to, and characterized by, the circumstances which would have entitled the party injured to maintain the action if death had not ensued.

2. ACTIONS—TRESPASS VI ET ARMIS—LIABILITY OF PERSONS ABETTING ACT.—In an action of trespass vi et armis, all those who are present encouraging, aiding, and abetting the act, are as much liable as the principal actors.

3. ——— DEFENCE OF FAULT IN ACTOR—WHERE WRONGFUL ACT CONCERNS PUBLIC PEACE, NOT AVAILABLE.—The life of an individual is guarded in the interest of the state, and not in the interest of the individual alone ; and not his life only is protected, but his person as well. In all such cases there are three parties, of which the state is one, which for its own good does not suffer the other to deal on a basis of contract with the public peace. Nevertheless, the defendant is entitled (under this statute) to show that the deceased provoked the difficulty, and by his conduct justified or excused defendant in killing him.

4. ——— ACT MUST BE SUCH AS CAUSED THE DEATH—INSTRUCTIONS. The statute gives the action if the wrongful act of the party caused the death, and not otherwise, and the statute must receive a reasonably strict construction. * * * And one may approve and applaud an assault and battery, committed by one upon another, without subjecting himself to liability to the injured party. And such principles should be substantially stated by instructions, in cases such as this is.

APPEAL from Livingston Circuit Court, HON. JAMES M. DAVIS, Judge.

*Reversed and remanded.*

*Motion for rehearing overruled.*

Statement of case.

This is an action for damages resulting from the killing of plaintiff's husband. The plaintiff is the widow of John Q. Gray. The deceased and defendant were neighbors, living near the town of Lisbonville, in Ray county, between whom there does not appear to have been other feeling than that of friendship and neighborship, prior to the trouble hereinafter mentioned. They were both men of good character, and were good citizens. On the sixth day of July, 1885, Gray was in the town of Lisbonville in the forenoon. He went home to dinner, and, having forgotten some errand in town, returned thither in the afternoon. The defendant's son, William W. McDonald, aged about twenty years, was also in town that day. He was in his shirt-sleeves. Whether he saw Gray that day, prior to the altercation between them, does not affirmatively appear. The evidence shows, however, that that afternoon young McDonald borrowed a pistol of a merchant in said town. Late in the afternoon, about five o'clock, perhaps, the defendant and a neighbor rode into town. After dismounting from his horse, the defendant and other persons were seated on the porch of Bishop's store, engaged in conversation, of an ordinary character, when young McDonald also came up, taking a seat on the steps of the porch. In a short time Gray came out of a mill, a short distance from where the said parties were sitting on the porch. He had on his shoulder a sack of meal. In going to the store of one Langford, Gray passed in about sixty feet of where the McDonald party were. It is inferable from the evidence that some time prior to this, a search warrant had been taken out to search the premises of McDonald for some missing boots; and that young McDonald had heard that Gray promoted this search, as an imputation upon him. On the appearance of Gray, coming from the mill, young McDonald said, there comes Gray, and he would "tackle him" about those boots. As Gray passed young McDonald hailed

him, with a coarse epithet, stating that now was the time to settle, or that he could "lick" him, or something of a like import. The evidence tended to show that defendant remonstrated with his son, and told him to let Gray alone. After Gray reached the sidewalk opposite Langford's store, he stopped, and saluted the defendant, saying: "How are you, Mr. McDonald." Then laying down his sack, he turned to young McDonald, and asked him what he meant by using such language toward him? The answer, in substance, was: "I mean just what I say," and, perhaps, repeating the epithet, said, "I can lick you." Gray said: "If you want anything of me, come over here and you can get it." Young McDonald, at this time, was standing not far from his position where he sat on the steps. Gray then advanced towards him, and picking up a rock, about the size of an ordinary fist, advanced towards young McDonald. As he advanced McDonald, jr., said: "Old man, you are walking into your grave," or some such words. When Gray had advanced to within about ten feet of him he hurled the stone at him. The evidence tends to show that young McDonald drew from his pants-pocket a pistol as Gray advanced with the stone. As the rock was hurled McDonald dodged down, and the rock passed over him. As he rose he fired two shots in rapid succession, each shot taking deadly effect in and about the chest of Gray. The evidence is conflicting as to whether defendant changed his position from the porch before the collision between Gray and his son. Defendant's evidence, however, showed, as does that of the plaintiff, that before the collision, defendant told his son to let Mr. Gray alone, etc. At all events just after the fatal shots were fired defendant was seen between the parties. Plaintiff's evidence tends to show that when defendant so came to the parties he struck Gray one or two blows with his fist back of the ear. While defendant's evidence tends to show that he did not leave his seat until at the moment of the collision, and that he ran between the parties to separate them, and did not strike

Gray.    Gray turned, and walked to Langford's store, stating that the McDonalds had acted cowardly, and he would see them again, or something to that effect, He then walked into the store, and died in a few minutes. The evidence further showed, that after the shooting defendant said that his son ought to have shot Gray, for using the rock on him.    There was other evidence, of an unimportant character, and much of contradiction among the witnesses, and some impeachment of plaintiff's witnesses.    But the foregoing are the substantial facts.

Among the instructions asked by defendant, and refused by the court, are the following :

"10.    Before the jury can find a verdict for the plaintiff in this case, they must be satisfied, by a preponderance of the testimony, that the defendant said or did something which caused his son to enter into said difficulty, or that he said or did something which caused his son to shoot Gray, or their finding must be for the defendant."

"11.    The court instructs the jury that it devolves upon the plaintiff to show to their satisfaction, by a preponderance of the testimony, that the defendant did some wrongful act which caused the killing of Gray, or their verdict must be for defendant."

"12.    The mere fact that the defendant was present at the difficulty and did not prevent the same, is not sufficient, but the plaintiff must show to their satisfaction, by a preponderance of the testimony, that the defendant said or did something which caused W. W. McDonald to engage in said difficulty, or said or did something which caused his son to shoot Gray, or their verdict must be for defendant."

"13. · The court instructs the jury that if they believe, from the evidence, that John Q. Gray voluntarily entered into a difficulty with one W. W. McDonald, and that the defendant said or did nothing which caused the said W. W. McDonald to engage therein, and that during said difficulty the said W. W. McDonald shot

said Gray, and that the defendant said or did nothing which caused said shooting, then the verdict must be for defendant."

"16. Although the jury may believe that the defendant was present at the difficulty between his son and Gray, and did not interfere to prevent said difficulty, until his son had shot said Gray, and although the jury may believe that said defendant approved the killing of said Gray by his son, yet they must find for defendant unless they further prove that said defendant knew that his son was armed and intended to kill said Gray, and aided and abetted his son in said killing, with the intention that his son should kill said Gray."

"19. Although the jury may believe that the defendant was present and interfered in the difficulty between his son and John Q. Gray, yet, unless they further believe that such interference on the part of defendant was for the purpose of aiding and abetting his son in killing the said John Q. Gray, and that he did aid and abet his son in said killing, they will find for defendant."

Among those given for the plaintiff are the following :

"4. If the jury believe, from the evidence in this case, that the son of the defendant, on the sixth day of July, 1885, at Lisbonville, Ray county, Missouri, being then and there armed with a loaded revolver, without provocation or excuse, sought for, provoked, and brought on a difficulty with the husband of plaintiff and willingly entered into such difficulty, and during the progress of the affray he shot and killed her husband, and if the jury further believe that defendant was present during the whole of the difficulty, and understood what had transpired between his son and plaintiff's husband, and that defendant by word, act, or deed encouraged his son to enter into the difficulty and shoot Gray, or if they believe that defendant being so present and understanding what had taken place between his son and Gray, and

knowing that his son had voluntarily provoked, brought on, and entered into such difficulty, undertook to aid or assist his son in his assault on and difficulty with Gray, and that said difficulty ended in Gray's death from wounds inflicted therein ; then the finding of the jury must be for plaintiff.''

It is not deemed necessary to present here all the instructions given and refused, as those above named present the important questions for determination, except those sufficiently noted in the opinion.

The jury returned a verdict for the plaintiff, assessing her damages at fifteen hundred dollars. Defendant has appealed.

C. T. GARNER & SON, J. L. FARRIS, J. A. CROSS, F. SHEETS, for the appellant.

I. It is insisted that no act or conduct of appellant was the cause of the death of the deceased Gray ; that the death of deceased was caused by his own acts and conduct, and the pistol shot fired by W. W. McDonald ; that appellant, by no word or act of his, brought on the difficulty, and that he did not participate therein ; had no knowledge of his son having a pistol ; that the advance of deceased in a threatening manner with the rock in his hand and finally throwing the rock at W. W. McDonald was the cause of the fatal shots. Appellant advised his son to have no difficulty with deceased. It is denied that appellant in any manner aided, abetted, or encouraged his son, W. W. McDonald, and the evidence in the cause fails to prove that appellant did aid, abet, or encourage his son in any way or manner in the difficulty. If, as respondent alleges, he struck the deceased with his fist, it was after the fatal shots had been fired, and could not have contributed to the death of deceased. It is insisted that, after the difficulty had begun and the parties were engaged in the difficulty, the appellant had the legal right to defend his son, and participate in the difficulty in aid and defence of his son, without regard to how the difficulty commenced or how

brought on. But it is denied that appellant or his son, W. W. McDonald, brought on the difficulty, or that appellant, at any time before, pending, or after the difficulty, struck deceased. What he did and all that he did was to separate them. The situation of the parties, the circumstances at the time, and the fact that they did separate in a moment after the appellant approached them, conclusively proves that appellant did separate them. And as soon as separated the deceased walked up to Bishop's porch and thence to the door of the store, and fell and died instantly. The evidence shows that appellant had not been at Lisbonville that day, until a short time before the difficulty, when he came with his neighbor, S. H. Cates. There were no private interviews or talks between appellant and his son that morning or that day. Appellant told his son to have no difficulty, or words to that effect. Gray was violent, angry, advancing, and aggressive, willing and eager for the fight. McDonald made no advance, remained in his original position, until he was in imminent danger of great personal injury, the rock was thrown, and necessity had arisen, and it was imperative for him to act, and he shot the fatal shots in his own defence, and the law justified him. Appellant's long life of uniformly peaceable conduct, and good character, rebut the idea, that on that occasion, he either brought on the difficulty or aided and abetted in the killing. He knew nothing of the difficulty until the very moment ; then it was so quick and rapid that nothing could be done.

II. Again it is urged that the deceased by his conduct contributed in such a degree to his own death, that this action cannot be maintained, and there can be no recovery. Hence it is insisted that the trial court erred in overruling the instruction in the nature of a demurrer to plaintiff's evidence, at the close of plaintiff's evidence, and also at the close of the case, that upon the law and evidence in this case, the jury should find for defendant. The refusal of this instruction was manifest error. *Powell v. Railroad*, 76 Mo. 80 ; *Heary*

*v. Railroad,* 76 Mo. 288. The statute must be strictly construed, being in derogation of the common law. *Proctor v. Railroad,* 64 Mo. 112. The statute limits the action to the person whose wrongful conduct caused the death. The appellant neither brought on 'the difficulty, nor caused the death, hence this action cannot be maintained against him. *Proctor v. Railroad, supra; Jackson v. Railroad,* 87 Mo. 424.

III. If the deceased was guilty of any want of ordinary care and prudence (however slight) which contributed to produce the injury, he cannot recover, and such want of ordinary care will operate as a defence to plaintiff's action, whether in point of time, it was either prior or subsequent to the negligence of the defendant or contemporary therewith. The deceased, Gray, did not exercise ordinary care and prudence; if he had he could easily have avoided the danger and difficulty. It was his conduct alone that made him guilty of contributory negligence and precludes a recovery. Beach on Con. Neg., p. 21, sec. 9; *O'Brien v. McGlunchey,* 68 Me. 552; *Doggett v. Railroad,* 78 N. C. 305; *Railroad v. Beeker,* 76 Ill. 26; Moak's Underhill's Torts, 285. Contributory negligence on the part of deceased is as complete a bar to the action brought for the benefit of his next of kin as it would have been if deceased had lived to bring the action himself for his own benefit. Beach on Con. Neg., sec. 20, p. 65, and authorities cited in note 1, on same page.

IV. The trial court erred in giving the instructions asked for by plaintiff; they were erroneous, not authorized by the law and evidence; did not contain the principles of law governing the case, and the law of self-defence; ignored the contributory negligence of deceased, arising from his wrongful conduct in advancing upon and assaulting W. W. McDonald, were argumentative and misleading to the jury. See authorities cited.

V. The court erred in refusing to give, on the part of defendant, instructions numbered one, eight,

and nine to twenty-six, both inclusive. These instructions contained the law and should have been given, especially those which were the counterpart of those given for the plaintiff and those on contributory negligence, based upon the wrongful conduct of the deceased, as shown by the evidence, in his aggressive conduct, advance, and assault upon said W. W. McDonald. The refusal of these instructions left the jury without the law being given upon material points of law involved in the case, as shown by the record and authorities already cited.

VI. The court erred in rejecting and refusing to admit in evidence the record of the acquittal of W. W. McDonald for the killing of said Gray. *Lofton v. Vogley*, 17 Ind. Rep. 107.

JOHN E. WAITE and CROSBY JOHNSON, with DAVIS & ROGERS, J. D. ROSS, and C. H. MANSUR, for the respondent.

I. One who voluntarily enters into a difficulty, and kills his adversary with a deadly weapon during the course of the difficulty, cannot invoke the doctrine of self-defence, no matter how great his peril may have become during such difficulty. *State v. Partlow*, 90 Mo. 608 ; *State v. Peak*, 85 Mo. 190 ; *State v. Culler*, 82 Mo. 623. As the son had brought on the difficulty between himself and Gray, and the defendant was present and knew all the facts, neither the defendant nor his son had a legal right to kill Gray to save the son from the peril which he had brought upon himself. Bishop. Cr. Law, sec. 665 ; *State v. Linney*, 52 Mo. 40.

II. As the defendant was present aiding and encouraging his son in his difficulty with Gray, he must be regarded as a principal and be held responsible for the consequences of his son's acts. *McManus v. Lee*, 43 Mo. 208 ; *Cooper v. Johnson*, 81 Mo. 483 ; *State v. Hildreth*, 51 Am. Dec. 371, and note. After the son had provoked the difficulty with Gray, the defendant could not legally take Gray's life to save that of his son until the

son had abandoned or offered to abandon the contest. *Crowder v. State*, 8 Lea, 669 ; *State v. Greer*, 22 W. Va. 800 ; *Smart v. State*, 105 Ind. 125.

III.   One who kills another in a duel, either formal or impulsive, commits murder.   *Thomas v. State*, 61 Miss. 60.

IV.   Contributory negligence has no application to cases of this character. *Besendecker v. Sale*, 8 Mo. App. 211 ; *Nichols v. Winfrey*, 79 Mo. 545, and 90 Mo. 403.

V.   Defendant's objection to the reading of depositions was properly overruled.   Notice was duly served, and the objection could only be raised by motion to suppress.   *Lewin v. Dulle*, 17 Mo. 64.   The objection actually made was on the ground of want of notice, whereas the record showed that notice had been duly served on the defendant.   The objection made did not raise the point that the depositions were taken before the defendant was served with summons.   In the absence of proof showing that the court actually erred the presumption is that the rulings were correct.

VI.   The court did not err in striking out the fourth count of the answer, pleading the acquittal of W. W. McDonald of the felonious killing of Gray.   The parties to that case, both plaintiff and defendant, are different from the parties to this.   Hence the record and estoppel were not evidence in this for or against either party. Freeman on Judg., sec. 319 ; *Duggs v. Stumpe*, 73 Mo. 513 ; *Winston v. Westfeldt*, 58 Am. Dec. 278.

VII.   As defendant's third and fourth instructions are drawn on the same theory as those of the plaintiff and would be open to the same objections as are now urged against plaintiff's instructions, the defendant is estopped from urging such objections. *Dunn v. Henley*, 24 Mo. App. 579 ; *Thorpe v. Railroad*, 89 Mo. 650.

PHILIPS, P. J.—I.   The first contention of appellant is, that, under the statute authorizing this character of action, only the person who committed the act of homicide is liable in damages to the designated survivor of

the deceased. The statute is as follows : "Section 2122. Whenever the death of a person shall be caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the party injured."

This action clearly is predicable alone upon the words, "whenever the death of a person shall be caused by a *wrongful act* of another." It is also clear, that the right of recovery by the designated survivor is limited to, and characterized by, the circumstances which would have entitled the party injured to maintain the action, if death had not ensued. It is simply the transmission of a cause of action to the widow or child, which at common law died with the party injured. *Proctor v. Railroad*, 64 Mo. 119 ; Beach on Contr. Neg., sect. 20. So, in determining whether the wife can maintain this action against the defendant, we have but to determine whether or not Gray could have recovered damages against him had he survived the injury. Gray's action would have been trespass *vi et armis*. In such action all those who are present, encouraging, aiding, and abetting the act, are as much liable as the principal actor. *Cooper v. Johnson*, 81 Mo. 489. It is the wrongful act producing the death which creates the liability. So if A, by his words of encouragement and conduct, incites B to commit an assault and battery, or a homicide, he is, both by the criminal and civil code, an accessory before the fact to the wrongful act, and is answerable therefor.

II. It is next insisted by appellant, that the law of contributory negligence applies to this character of action, and the action of the trial court in refusing instructions of this character is assigned for error. No case is cited where the rule of contributory negligence has been invoked and applied in this form of action to defeat it. In

actions sounding in tort, arising out of circumstances of contracts, duties, and obligations between two persons, which concern them alone, the maxim, *volenti non fit injuria,* applies. In such cases the consent, connivance, or invitation of the party complaining to the act will prevent his recovery. The doctrine of contributory negligence is closely allied, in principle, to this rule. So it is said a man cannot complain of a nuisance in the erection of which he has concurred or acquiesced; nor of an act of adultery at which he has connived; nor of any act of negligence by which he is injured, to which his own negligent act has in part contributed. But the rule seems otherwise where the wrongful act concerns the public peace and welfare. So it is held that an assent to an assault and battery, or to engage in a duel, does not constitute a defence to an action for damages. "The life of an individual is guarded in the interest of the state, and not in the interest of the individual alone; and not his life only is protected, but his person as well." In all such cases there are three parties, of which the state is one, which, "for its own good does not suffer the other to deal on a basis of contract with the public peace." Cooley on Torts, 162–3 ; *Jones v. Gale,* 22 Mo. App. 637. Nevertheless, the defendant is permitted, under this statute, to show that the deceased provoked or brought on the difficulty, and by his own misconduct placed the defendant under circumstances of justifiable or excusable homicide, or such as would mitigate the damages. And of this rule the defendant had the benefit in instructions accorded him by the court. This accords with the theory on which such cases have usually been tried. *Morgan v. Durfee,* 69 Mo. 469 ; *Nichols v. Winfrey,* 79 Mo. 544.

III. There is another more serious obstacle to the maintenance of this judgment. While, as already stated, the law respecting the liability of accessories before the fact applies in its general aspects to this form of action, this statute is nevertheless somewhat *sui generis.* The "wrongful act," for which the party is answerable in

damages, must be such as to *cause* the death of the other party. This is its clear import. In *Jackson v. Railroad* (87 Mo. 422), the defendant railroad company was sought to be held liable for the act of its servants, in taking on board of one of its passenger cars, against his protest, and that of a friend, a man who had been wounded badly by some detectives, and carrying him to a distant point. It was claimed that the act hastened his death, although the evidence was, that the wounds he had already received were mortal. The court said: "The statute gives the action if the wrongful act of the party sued *caused the death*, and the first instruction added, or hastened his death. It is a statute in derogation of the common law, and must receive a reasonably strict construction. * * * The second of defendant's instructions should have been given, for the same reason that the first given for plaintiff should have been refused, viz., that the statute does not give an action to the representative, unless the wrongful act complained of occasioned the death of the party." The first instruction given for the plaintiff was condemned because it authorized a recovery, if the act of the defendant merely hastened the death, although he died of the mortal wounds already given by another. It follows that, where it is sought, under this statute, to recover against a person merely aiding and abetting, but not committing the physical act producing death, the encouragement given, the thing done by him, must be such as to contribute to or produce the cause. It was not sufficient that the defendant should have been merely present witnessing the act, without trying to prevent it. Nor can he be made liable alone on any mere words uttered, or act done, after the fatal shots were fired.

In *Cooper v. Johnson* (*supra*), the court say: "It is not accurate to say that all who were present at the commission of a trespass, are liable as principals, who make no opposition or manifest no disapprobation of another's person or property. * * * That one was present and witnessed the trespass, but neither by word,

sign, or act, nor in any other manner, signified his approval of it, does not render him liable. He is not, by his mere silence, to be held as countenancing the act. * * * One may rejoice over a murder after its commission without for that being criminally liable ; and so may one approve and applaud an assault and battery committed by one upon another without subjecting himself to liability to the injured party." There is nothing in the record to show there was any preconcert of action between defendant and his son looking to this tragedy, or any encounter between Gray and young McDonald. The latter went to town that day in his shirt-sleeves and unarmed. He borrowed the pistol after getting there, and in the absence of the defendant. The evidence shows that the coming of defendant to town late in the afternoon was purely accidental. There was no evidence tending to show that defendant knew his son had the pistol prior to the instant it was drawn in the melee. The meeting between the parties seemed to be accidental. The evidence fails to show any word of encouragement from defendant to his son preceding the difficulty, or the firing of the fatal shots. On the contrary, the evidence of both plaintiff and defendant was, that whatever the defendant did say, was to stay the act of the son. The only evidence, in any degree tending to show any act on the part of defendant, prior to the firing of the pistol, from which it would be at all permissible for the jury to infer a willingness even on the part of defendant to aid his son, is the statement of some of the plaintiff's witnesses that defendant had changed his position from the porch, and was standing near his son when he fired, coupled with the act, according to plaintiff's evidence, of striking Gray after the shooting. On the other hand, the defendant's evidence tended to show that he not only discouraged his son by word, and did not even see the pistol until the shot was fired, but that the onset of Gray was so impetuous that he barely had time to reach the parties after the rock was thrown by Gray, and the shots made by the son ;

and that he only rushed in for the purpose of separating the parties, and did not strike Gray. On this state of the evidence, after the court gave the instruction set out in the statement of facts, for plaintiff, defendant was certainly entitled, as a counterpart, to have the law declared in conformity to the principles laid down in this opinion. This the court failed to do. Instructions numbered ten, eleven, twelve, thirteen, and nineteen, asked by defendant and refused by the court, should have been given, or the substance of them. Instruction numbered sixteen, asked by the defendant, was properly refused, 'in the form in which it was drawn. The defendant, however, is entitled to have the jury instructed to the effect that, although they may believe that defendant was present at the difficulty, and did not interfere to prevent it, and although the jury may further believe that, after the shooting, the defendant approved the act, such facts, or acts, alone, are not sufficient to authorize the jury to find that defendant aided in the act of killing.

Appellant has discussed other propositions of law, which are not deemed important enough to justify the prolongation of this opinion.

It follows that the judgment of the circuit court is reversed and the cause is remanded. All concur.

### On motion for rehearing.

PHILIPS, P. J.—I. It is claimed that the defendant adopted in his instructions the same error as that contained in the instructions for the plaintiff, for which the judgment was reversed. This is an entire misconception of the grounds of reversal. The opinion does not condemn the instructions given on behalf of plaintiff; but the error of the court lay in refusing to concede to defendant certain named declarations of law, predicated upon facts which the defendant's evidence tended to establish.

II. It is further claimed in the motion that this

court overlooked the fact that the substance of the instructions, asked by the defendant, was embodied in instructions given for plaintiff.

We are wholly of a different opinion. The plaintiff's instructions were so framed, as while, perhaps, not asserting the opposite doctrine announced in those which the court refused for defendant, and which we held should have been given, or the substance of them, yet under them the jury might well have believed that defendant's physical presence, being in a position to aid and abet, and the fact that he may have struck the deceased after the fatal shot was fired, or approbated the act afterwards, were, any of them, sufficient to warrant a verdict against the defendant. Whether such acts or any of them, under the circumstances, indicated the essential wrongful act, were facts to be found by the jury under proper directions from the court.

As much stress, under the instructions given for the plaintiff, as indicated by the line of argument pursued by respondent's attorneys in their brief herein, was likely to be placed upon the fact that defendant did not actually attempt to restrain his son, or that he may have struck deceased after the fatal shots had been fired, or approved the shooting after it was done, the defendant was entitled to a distinct and clear enunciation of the law applicable to his evidence ; that, although he was present, that was not alone sufficient to warrant a verdict against him ; that, although he may have run in between the parties after the shooting, or approved of the act afterwards, yet, unless the act done by him was such as to *cause* the death, as defined in the opinion, no verdict should go against him. The language of Judge Story, in *Livingston v. Ins. Co.* (7 Cranch, 506, 544), approved by this court in *Cahn v. Reid* (18 Mo. App. 116), is most appropriate here : "If, in any point of law, the (defendant) was entitled to such direction, the court erred in its refusal, although the direction afterwards given by the court might, by inference and argument, in the opinion of this court, be pressed to the

same extent.   For the  party has a right to a direct and
positive instruction ; and  the jury  are not  to be left to
believe in distinctions  where none exists,  or to reconcile
positions  by  mere  argument and inference.   It would
be a dangerous practice, and tend to mislead instead of
enlightening a jury."

In none of the instructions given on behalf of the
plaintiff were the minds of the jury so directed as to
what would, under the  statute in  question, amount to
aiding and abetting, as to enable them to try the case
with justice to the defendant.   The "glittering general-
ities" in which plaintiff presented this issue to the jury
left to them a dangerous latitude of conjecture, unless
restrained or guided by those asked by the defendant.

As appears from the brief of counsel filed in the
main cause they themselves denied the correctness of the
law applicable to this case, as announced in the opinion
herein ; and so it is but just to them to say that they
did not conceive the instructions drawn by them at the
trial and given by the court were out of harmony with
their position taken at this bar.   Motion overruled.
All concur.