# GRAY v. McDONALD, *Appellant.*

DIVISION ONE.

1. **Crime, Civil Action for:** MERGER. The right of action for an injury done in the commission of a felony or misdemeanor is not merged in the public offense. ( R. S. 1879, sec. 1678.)

2. ———— : ————. A criminal prosecution by the state and a civil action for damages arising from the same act may be carried on at the same time against the same defendant.

3. ———— : ————. A judgment of acquittal in the public prosecution will constitute no defense in the civil suit for the same defendant, nor for his abettor.

4. **Third Section of Damage Act:** CAUSE OF ACTION. Under Revised Statutes, 1879, section 2122, known as the third section of the damage act, the cause of action survives to the designated person, if the injured party would have had a common-law or statutory right of action, if death had not ensued.

5. ———— : ————. A new cause of action is not created by said section.

6. ———— : ABETTOR OF HOMICIDE. When one is present at a homicide exciting and encouraging the battery that results in the killing, he becomes a party to the wrongful act and is liable to an action for damages under section 2122, *supra,* the same as the actual slayer.

7. ———— : ————. The evidence in this case considered and *held* to support the verdict on the issue that the defendant was present exciting and encouraging the homicide.

8. ———— : CONTRIBUTORY NEGLIGENCE OF DECEASED. Contributory negligence of the deceased is no defense to an action by a widow under Revised Statutes, 1879, sections 2122 to 2123, for the intentional killing of her husband.

9. ———— : EXEMPLARY DAMAGES. Exemplary as well as actual damages may be recovered in such action.

*Appeal from Livingston Circuit Court.*—HON. JAMES M. DAVIS, Judge.

AFFIRMED.

*C. T. Garner & Son, J. L. Farris, J. A. Cross* and *F. Sheetz* for appellant.

(1)   Under the statute authorizing this action only the person who committed the homicide is liable.   It is the wrongful act producing death which creates the liability.   R. S. 1889, sec. 4426 ; *Proctor v. Railroad,* 64 Mo. 112 ; *Dulaney v. Railroad,* 21 Mo. App. 597 ; *Jackson v. Railroad,* 87 Mo. 424.   (2)   The presence of defendant at the difficulty and his not interfering to prevent it, his striking Gray with his fist after the shooting and the approval of the latter are not sufficient to create a liability.   *Gray v. McDonald,* 28 Mo. App. 477 ; *Cooper v. Johnson,* 81 Mo. 483.   (3)   The record shows the homicide on the part of young McDonald was a justifiable or excusable one.   *Morgan v. Durfee,* 69 Mo. 469 ; *Nichols v. Winfrey,* 79 Mo. 544.   (4) The death of deceased was in part occasioned by his own concurring or contributory act which bars recovery in this case.   *Craig v. Sedalia,* 63 Mo. 417 ; *Kempinger v. Railroad,* 3 Mo. App. 581 ; *Smith v. St. Joseph,* 45 Mo. 452 ; *Smith v. Railroad,* 61 Mo. 592 ; *Powell v. Railroad,* 76 Mo. 80 ; *Henry v. Railroad,* 76 Mo. 288.   (5) The damages are excessive.

*Crosby Johnson, John E. Waite, Davis & Rogers, J. F. Harwood, J. D. Ross* and *C. H. Mansur* for respondent.

(1)   The doctrine of contributory negligence has no application to cases of this sort.   *Gray v. McDonald,* 28 Mo. App. 477 ; *Besendecker v Sale,* 8 Mo. App. 211 ; *Nichols v. Winfrey,* 79 Mo. 40᠑., *McCue v. Klein,* 48 Am. Rep. 260 ; 60 Tex. 168 ; Cooley on Torts [ 1 Ed.] 162.   (2)   If two persons by mutual consent, in anger, fight together, each is liable to the other for actual damages inflicted.   *Shay v. Thompson,* 48 Am. Rep.

538 ; 59 Wis. 540 ; Cooley on Torts [1 Ed.] 159 and 163 ; *Dole v. Erskine,* 35 N. H. 503. (3) One who brings on a difficulty, with the purpose of killing his adversary and then does, in the course of the difficulty, kill him, cannot shield himself under the law of self-defense *State v. Gilmore,* 95 Mo. 554 ; *State v. Parker,* 96 Mo. 383. (4) As the son had brought on the difficulty, and the defendant was present and knew all the facts, neither the defendant nor his son had a right to kill Gray to save the son from peril which he had brought upon himself, until after the son had done all he could to avoid the killing of Gray. 2 Bish. Cr. Law, sec. 665 ; *State v. Linney,* 52 Mo. 40. (5) As defendant was present aiding and encouraging his son, he must be regarded as a principal and held responsible for the consequences of his son's acts. *Gray v. McDonald,* 28 Mo. App. 477 ; *Cooper v. Johnson,* 81 Mo. 483. (6) After the son had provoked the difficulty, the defendant could not legally take the life of Gray to save the son's, until the son had abandoned, or offered to abandon, the contest. *Crowder v. State,* 8 Lea, 669 ; *State v. Greer,* 22 W. Va. 800. (7) As the defendant stood ready to defend his son, he was guilty even though his assistance had not been given ; for in such case his presence would have given encouragement to the son. *Allred v. Bray,* 41 Mo. 484 ; *State v. Nelson,* 98 Mo. 414 ; *State v. Hildreth,* 51 Am. Dec. 371, and note. (8) Evidence of the defendant's good character was improperly admitted, and cannot be considered in determining the case. *Brown v. Evans,* 17 Fed. Rep. 912 ; *Elliott v. Russell,* 92 Ind. 526 ; *Sowell v. McDonald,* 58 Miss. 281. (9) The court did not err in striking out the fourth count of the answer, pleading the acquittal of W. W. McDonald. The parties to that case, both plaintiff and defendant, were different from this. Hence, the judgment there was not evidence for or against either party. Freeman on Judg., sec. 319 ; *Dugg v. Stumpe,* 73 Mo. 513. (10) As the defendant

in his instructions adopted the theory, that, if the
defendant had aided his son in the difficulty, he was
liable, he will not be heard to complain of the plain-
tiff's instructions. *Bank v. Armstrong*, 92 Mo. 265.
(11) By adopting the same theory as to the facts that
would make him liable, he is now estopped from saying
that the theory was erroneous. *Reilly v. Railroad*, 94
Mo. 601. (12) There was no error in refusing the
refused instructions, as, so far as they were correct, their
principles were embraced in those given. *Brown v.
Railroad*, 99 Mo. 310. (13) Where there are elements
of wantonness and malice, the jury is authorized to
award exemplary damages. *Goetz v. Ambs*, 27 Mo. 29;
*Kennedy v. Railroad*, 36 Mo. 365; *Welsh v. Stewart*,
31 Mo. App. 376; *Clark v. Fairley*, 30 Mo. App. 336.
(14) The jury were authorized to exercise discretion
in awarding damages and the sum awarded was not
excessive. *Adams v. Railroad*, 100 Mo. 555; *Waldhier
v. Railroad*, 87 Mo. 38.

BLACK, J.—The plaintiff who is the widow of John
Q. Gray brought this suit against William W. McDon-
ald and William G. McDonald, to recover damages for
killing her husband.

William W., having been acquitted in a criminal
prosecution, the suit was dismissed as to him. On the
second trial the plaintiff recovered a judgment for
$1,500 which was reversed by the Kansas City court of
appeals. 28 Mo. App. 477. The third trial resulted in a
judgment for plaintiff for $4,000, from which this appeal
is prosecuted.

The amended petition upon which the cause was
tried states in substance that William W. McDonald
intentionally and maliciously shot and killed Gray, and
that the defendant, William G. McDonald, aided and
abetted in the killing.

William W. McDonald was a young man about
twenty years old and resided with his father, the present

defendant. Gray and the McDonalds lived within three-fourths of a mile of each other, and near the village of Lisbonville in Ray county. The defendant says he was on friendly terms with Gray, though it appears he had not been at the latter's house for a year before the shooting. The McDonald house had been searched by an officer for alleged stolen boots, and it appears young McDonald had heard that Gray instigated the search, and that Gray accused him of stealing the boots. It does not appear very clearly when the boy first received this information, but we infer it was on the day of the shooting.

The village of Lisbonville is a small place, with a few houses arranged around what is called Allen's Mill. Bishop's store fronted south and had a porch in front of it, and the mill stood less than one hundred feet south of the store. Langford's store fronted east, and the mill was one hundred feet nearly east from that store.

Young McDonald had been to the village in the forenoon, and returned in the afternoon. He borrowed a coat and pistol at Bishop's store, left for a short time and then returned. In the meantime, the defendant had arrived and was sitting on the porch with some other persons, and the boy sat down by his father. From the evidence of defendant it appears he and the boy had some conversation about the information the boy had received, to the effect that Gray instigated the search and accused the boy of stealing the boots, but the record is not clear as to how long this conversation lasted, though it could not have been long. While the defendant, his son and others were sitting on the porch, Gray came out of the mill with a sack of meal on his shoulder, going to Langford's store. The boy said, "There goes old John Gray, and I am going to tackle him about the boots," or, as another witness says, "Now is a good time to settle with old Gray about the boots." The boy got off the porch and

walked towards and addressed Gray in profane and exceedingly vulgar language. Gray turned around, raised his hat, and said to the boy, "How do you do, Mr. McDonald," and then walked on, and the boy repeated the same or nearly the same language that he had before used. Gray, having reached the sidewalk, threw down his sack of meal and asked the boy what he wanted, and the boy said, "I mean what I say, I can lick you," or as one witness says, "I intend to lick you." Gray then said, "If you want anything come over here and you can get it," and the boy replied, "I will meet you half way."

One witness states what then transpired in these words: "Mr. Gray advanced toward him and young McDonald drew a revolver from his right-hand pants pocket and put it partly behind him. When Mr. Gray saw him draw his pistol and put it behind him, he picked up a stone and advanced on toward young McDonald, who said, 'Old man Gray, you are marching to your grave.' Gray threw the stone at McDonald, who dodged down, and it did not hit him. Young McDonald took his pistol from behind him and shot Gray in the left breast. Gray kept advancing toward him, and McDonald shot him again in the left breast, not more than five or six inches from where he first shot him. Old man McDonald seized old man Gray by the left shoulder with his left hand and struck him two licks with his right fist. It appeared to be on the back of his head or on the neck. Mr. Gray turned and said something, but I did not understand what it was."

Gray died within thirty minutes, and according to another witness Gray said: "The scoundrel has shot me," and the defendant said, "Yes, he ought to have killed you."

One witness states that at the time Gray picked up the stone, "old man McDonald was standing three or four feet from his son, between his son and the porch of Bishop's store. Old man McDonald was in plain

view of his son when his son drew his pistol. Was about six feet from him. He said nothing to prevent his son from shooting Gray, He said nothing to his son at the time he drew his pistol nor at the time he did the shooting; did nothing but walk up to Gray and take hold of his shoulder and strike him twice, as I have related." According to one of plaintiff's witnesses defendant said to the boy when the latter first spoke to Gray, "Let him go," and another witness for the plaintiff testified that old man McDonald said in a careless way, "Oh, never mind about that."

Defendant borrowed $30 and left for Hamilton immediately after the shooting, but we are not informed where Hamilton is. According to Langford, defendant said when borrowing the money, "We have to get out of this pretty quick." Evidence of subsequent statements of defendant tends to show that he interfered because he thought Gray more than a match for the boy, but these statements are denied by the defendant.

The evidence of the defendant is to the effect that he repeatedly told the boy to let Gray alone, that he interfered for the purpose of separating them and that he did not strike Gray. George C. McDonald, who was an eye-witness to the transaction, says defendant told the boy twice to let Gray alone ; that defendant told Gray not to throw the rock at his son.

1. On motion of the plaintiff the court struck out that part of the answer which set up the fact that William W. had been indicted for the murder of Gray, and upon a trial was duly acquitted of the charge, and this ruling is assigned as error.

The right of action for an injury done in the commission of a felony or misdemeanor is not merged in the public offense. R. S. 1879, sec. 1673. A criminal prosecution by the state, and a civil action for damages arising from the same act, may be carried on at the same time against the same defendant. Cooley on Torts, 88. The parties to the two actions and the redress afforded

by them are different; so that according to the plainest principles of law a judgment in one proceeding is no bar to the prosecution of the other. Freeman on Judg., sec. 319. Hence, it has been held, and properly held, that in a suit by a widow against a party for killing her husband, the record of acquittal of such party on an indictment for murder of the husband is irrelevant. *Cottingham v. Weeks*, 54 Ga. 275. The judgment of acquittal on the indictment against William W. McDonald would constitute no bar or defense to this suit against him, and it must follow that it constitutes no bar or defense in this action against the alleged aider and abettor. Indeed it was long ago held by this court in an action of assault and battery that the plaintiff could recover exemplary damages, though the defendant had been convicted and fined in a criminal prosecution for the same offense. *Corwin v. Walton*, 18 Mo. 72.

2. It is next insisted by the appellant that this action is founded on section 2122 of the Revised Statutes, 1879, being the third section of the damage act; that by that section the person only who committed the act of homicide is liable in damages to the designated survivor of the deceased, and hence a demurrer to the evidence should have been sustained. The first branch of the proposition is conceded; but we do not agree to the second in the sense in which it is pressed by appellant. The statute declares: "Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the injured party to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured."

This section like the preceding one does not, as is often supposed, create a new cause of action ; it transmits to the designated persons a cause of action when the injured person would have had one, had death not ensued. In other words the cause of action does not abate by reason of the death of the person injured. *Proctor v. Railroad*, 64 Mo. 112 ; *White v. Maxey*, 64 Mo. 552.

The first inquiry, therefore, is, whether the injured party would have had a cause of action against the defendant for the wrongful act causing death, had death not ensued. *Crumpley v. Railroad*, 98 Mo. 36. If the injured party would have had a common-law or statutory cause of action, had death not ensued, then the cause of action survives to the designated person. Now in order to make the defendant liable in a common-law action for damages it is not necessary to show that he actually fired the shot. As said by this court in *McMannus v. Lee*, 43 Mo. 206, any person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks or signs, or who in any way or by any means countenances or approves the same, is in law deemed to be an aider and abettor, and is liable as a principal. But, on the other hand, it is to be borne in mind that mere presence at the commission of a trespass or other wrongful act does not render a person liable as a participator therein. If he is only a spectator, innocent of any unlawful intent, and does no act to countenance or approve those who are actors he is not liable.

The same principles of law were approved and asserted in the subsequent case of *Cooper v. Johnson*, 81 Mo. 483. That the defendant was present when his son invited the difficulty and shot Gray, is not disputed, and if, therefore, he excited or encouraged the trespass and battery which resulted in the death of Gray he was a party to the wrongful act, and occupies no better position than the boy, though he did not fire the shot which

caused the death. The observations made in *Jackson v. Railroad*, 87 Mo. 424, are not at all in conflict with what we have said, for in that case the defendant had nothing whatever to do as aider, abettor, or otherwise, with the wrongful act which caused the death of the plaintiff's husband. The instructions given in this case present the foregoing principles of law favorably for defendant.

3. But it is insisted there is no evidence that the defendant by act or word aided or encouraged his son in the commission of the assault. There is certainly evidence tending to show that the boy invited, sought for and provoked the difficulty without any justifiable cause whatever. While two of plaintiff's witnesses say the defendant told the boy to let Gray alone, their evidence goes to show that this remark was made when the boy first spoke to Gray, and one of them says the remark was made in a careless way. What the defendant really meant by the remark depends much upon the manner in which it was made. But there is very positive evidence that defendant was on the ground and within three or four feet of his minor son when the latter drew the pistol and defendant said nothing to prevent the shooting. Though the defendant at first rebuked the boy, there is evidence tending to show that he subsequently, by his acts, if not words, encouraged the boy in the assault. It is our opinion there was evidence tending to show that defendant aided and encouraged the boy in the wrongful act. There was also contrary evidence, but it was for the jury to settle this conflict.

4. Very full instructions were given on both sides as to the right of the boy to defend himself and of the father to assist him in such defense, and, as no specific objection is made to these instructions or any of them, they need not be set out or especially noticed. We may say they appear to us fair to the defendant.

5. It is argued that deceased was guilty of rash and imprudent conduct in stopping and laying down his sack and assuming an aggressive position, so that his own acts concurred in producing his death, and for this reason the plaintiff should not recover. Cases on contributory negligence are cited in support of the proposition.

This action is not founded on negligence at all, and in order to constitute contributory negligence on the part of the deceased there must have been negligence on the part of defendant. If the defendant is liable at all it is because he aided and assisted the boy in the commission of a wanton and wilful act causing the death of Gray. If the defendant's act was justifiable, then that is the end of the case; if it was not, then he is liable. As has been well said, an intentional assault inflicted upon one is an invasion of his right of personal security for which there is a redress by an action at law, and he cannot be deprived of his redress on the ground that he was negligent and took no care to avoid such invasion of his rights. Contributory negligence is, therefore, no defense in an action for an assault and battery. Beach on Cont. Neg., sec. 22.

6. The defendant complains of the following instructions given at the request of the plaintiff concerning damages:

"In case the jury shall find from the evidence that the shooting of plaintiff's husband by defendant's son was wrongfully inflicted in a spirit of hatred, ill-will or malice, and that it was done wantonly and without reasonable cause or just provocation or excuse, and shall further find that defendant, with full knowledge of such facts, was present, aiding, abetting, assisting or encouraging the son in his assault on and shooting her husband, then the jury, in assessing plaintiff's damages, are not restricted to the actual loss sustained by the plaintiff from the death of her husband, but the jury may award her such punitive and exemplary damages as they may

think, under the circumstances, fair and just in addition to the actual loss resulting to her from her husband's death; provided, that the whole amount shall not exceed $5,000."

There is an abundance of evidence tending to show that the boy shot and killed Gray wantonly and in a spirit of hatred and malice, and that the defendant, with full knowledge of these facts, aided and abetted the boy in shooting Gray, and under this state of facts Gray could have recovered exemplary damages had the shooting not caused his death. The real question is whether exemplary damages are to be allowed in any case where the suit is based upon the before-mentioned section 2122 of the statute. Section 2123 limits the recovery to an amount not exceeding $5,000 as the jury "may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default."

Exemplary damages were allowed in many actions of tort before the passage of the statute in question, and aggravating and mitigating circumstances were admitted in evidence as affecting the amount of such damages. Thus provoking words which would not justify an assault and battery could be shown in mitigation, but no provocation would reduce the damages in such an action below the actual damages, unless it amounted to a justification. *Birchard v. Booth*, 4 Wis. 67. The expressions, aggravating and mitigating circumstances, were well known to the law when used by the legislature, so that the statute just quoted must mean that in these actions, based on section 2122, the party suing may recover not only actual, but also exemplary, damages; and this is the result of the former adjudications of this court. *Parsons v. Railroad*, 94 Mo. 286; *Nichols v. Winfrey*, 79 Mo. 544; *Smith v. Railroad*, 92 Mo. 360; *Morgan v. Durfee*, 69 Mo. 469; *Owen v. Brockschmidt*, 54 Mo. 285.

The defendant makes frequent citations of *Porter v. Railroad*, 71 Mo. 66, as asserting a different doctrine, where it was said when speaking of statutes allowing relatives of the deceased person to sue, that the damages recoverable under them were actual only and not exemplary, save where the amount was fixed by the statute, citing Field on Damages, 498. No such question arose in that case, for it was a suit by the person injured. Again, it is clear the court was speaking in general terms of these statutes in different states, and did not have in mind the peculiar language of the statute of this state. As the author there cited says, such statutes generally provide only for actual damages ; but in some states the statutes do in express terms or by implication provide for exemplary damages, and our statute belongs to that class.

The objection that the instruction did not allow the jury to take into consideration mitigating circumstances has no merit, for not a single circumstance was withdrawn from their consideration. Under it they were obliged to consider all the circumstances, even in awarding exemplary damages. The point made that the verdict is excessive is untenable. The judgment is affirmed. The other judges concur. BARCLAY, J., concurs in the conclusion reached and in the construction of section 4427 ( R. S. 1889 ) but not in all the observations made touching exemplary damages in other cases.