MORGAN v. DURFEE, *Appellant.*

1.  **The right to Defend one's Person and Property.** Every man has a right to defend his premises from intrusion as well as his person from attack, and for that purpose to employ such force as may reasonably appear to him to be necessary; and if in the use of such force fatal consequences unexpectedly ensue to the intruding or attacking party, he is not answerable for them.

2.  **Exemplary Damages** cannot be recovered without proof of aggravating circumstances attending the injury.

3.  **Liability for Consequences of Opposing Force to Force.** Where one resists, by force, the violence of a hostile intruder, directed against both his person and his property, he is responsible only for the natural and probable consequences of his act, and not for any unforeseen and unfortunate consequences.

4.  **Right to Defend one's place of Business.** One's business

office is *pro hac vice* his dwelling, and the owner has the same right to use force in defending it against intrusion as he has in defending his dwelling.

5.    **Malice.**  An instruction which uses the term "malice" without defining it, should not be given.

6.    **An Instruction** which submits a question of law to the jury for their determination, is properly refused.

7.    **Evidence of Defendant's Wealth:** EXEMPLARY DAMAGES.  The pecuniary standing of the defendant is not a proper subject of inquiry as bearing upon the question of damages sustained by the plaintiff, unless the case is attended by such circumstances of aggravation as will authorize the giving of exemplary damages.  And this is the rule in actions brought under Wagner's Statutes, section 4, page 520, as well as in ordinary cases.

*Appeal from Atchison Circuit Court.*—HON. H. S. KELLEY, Judge.

This was an action under the statute concerning damages, (Wag. Stat., p. 520,) sections 2 and 3 of which give the minor child a right of action for the killing of his parent.   Section 4 provides that the jury may give such damages as they may deem fair and just, not exceeding $5,000, with reference to the necessary injury resulting from such death, and also having regard to the mitigating or aggravating circumstances attending the act which caused the death.   At the trial evidence was given tending to show that the defendant was worth thirty or forty thousand dollars.   The court gave the following instructions for the plaintiff:

1.    If you find from the evidence the defendant wrongfully struck the said Pressley G. Morgan on the head with a notarial seal, and knocked him upon the brick pavement, or by force of the lick he fell upon said pavement, and the blow or fall gave him a wound or wounds upon the head which caused his death, you should find for the plaintiff, and assess his damages as you may believe to be right and proper, not exceeding $5,000, with reference to the necessary injury resulting from the death of said Morgan to the said minor, the said Alonzo P. Morgan; also having ref-

erence to the aggravating or mitigating circumstances attending the giving of the blow, that is to say: If you find that the blow was not only wrongfully given, but was wantonly and cruelly inflicted in a spirit of hatred or ill-will, and without reasonable provocation, you may allow such sum as you may deem proper under all the circumstances, including punitive or exemplary damages, but if the act of the defendant was wrongful, yet if it was attended with circumstances of provocation and insult, this may be considered in mitigation of damages.

2. If you find from the evidence that the defendant struck the said Pressley G. Morgan on the head with a notarial seal, a dangerous weapon, and thereby knocked him down, and the blow, or the fall, or both combined, caused his death, it devolves upon the defendant to show to the satisfaction of the jury, by a preponderance of the evidence, that he was justifiable in giving the blow in his own proper self-defense; unless such justification appears from the evidence offered by the plaintiff, it must appear from all the evidence in the case to the satisfaction of the jury that the blow was justifiable on the ground of self-defense. If this so appears, you should find for the defendant.

3. The defendant had a right to order the deceased to leave his office and go out of it, and it was the duty of the deceased to comply with the request or order, and if he refused to do so, the defendant had a right to lay his hands upon him and put him out by force, and if the deceased resisted the defendant by the use of force and violence to his person, either actual or threatened, the defendant had the right to oppose force with force, using such force and measures only as might be reasonably necessary to eject the deceased from his office, but the defendant could have no right to use a deadly weapon and strike the deceased with a dangerous or deadly weapon upon a vital part, for the purpose of forcing or driving the deceased out of his office. But if in attempting to put the deceased

out, he, the deceased, resisted the defendant by violence and by assaulting him by taking him by the throat, and the defendant did believe and had good reason to believe that the deceased was about to do him some great personal injury, the defendant had the right to defend himself against such threatened danger by the use of any weapon, even to the extent of taking his life or inflicting an injury that might result in death. It is not essential to this defense that there should be actual or real danger, or that the peril of great bodily harm should be really imminent. If from all the circumstances actually attending the situation at the time of the blow given by the defendant, there was reasonable ground to believe that the deceased designed to do the defendant some great personal injury at the time, and the defendant struck him with the seal to avert such injury, and not in a spirit of malice or revenge, he was justifiable, although there may have been no design on the part of the deceased to do the defendant any serious injury nor danger that it would then be done. The defendant had the right to act upon the appearances, in deciding upon the situation, and whether the defendant had good reason to apprehend real danger at the time. The general reputation of the deceased in the neighborhood as to being a violent, turbulent, dangerous man, or a quiet, peaceable, one, as shown by the evidence, as also any threats he may have made shortly before the difficulty, may be considered.

The court refused an instruction offered by the defendant to the effect that on the evidence the plaintiff was not entitled to recover, and also the following, among others:

7. If the jury believe from the evidence that Pressley G. Morgan went into the law office of defendant and used loud and offensive language, and the defendant thereupon requested said Morgan to leave his office, and that said Morgan refused so to do, but continued to use loud and offensive language, and thereupon defendant again requested said Morgan to leave his office, and pushed him with his

left hand, it was Morgan's duty to comply with said request; and if the jury believe from the evidence that said Morgan, instead of leaving the office, assaulted defendant and laid hold of his person in a violent and threatening manner, and that defendant, in defense of his person and the possession of his office, used such force as was reasonably necessary under the circumstances, then said Morgan, if death had not ensued, would not have been entitled to maintain an action and recover damages on account of the injuries so inflicted by said defendant, and if said Morgan could not have maintained said action, neither can the plaintiff, and the jury will find for the defendant.

Other facts are stated in the opinion.

*Willard P. Hall* for appellant.

1. The court erred in admitting evidence of defendant's pecuniary standing. (a) The question is not what defendant is able to pay, but what plaintiff ought to recover. 2 Greenl. Ev., § 269; *Conant v. Griffin*, 48 Ill. 410. (b) Such evidence is admissible only in cases where exemplary damages may be given. 2 Greenl. Ev., § 269; *Buckley v. Knapp*, 48 Mo. 152. This is not such a case, because there was no willfulness, malice or wantonness on the part of defendant. *Perkins v. M., K. & T. Ry. Co.*, 55 Mo. 213. (c) The action is brought under the damage act, section 4 of which allows the jury to consider the aggravating circumstances. Defendant's wealth is not one of these. 2. Plaintiff ought to have been non-suited. *Hinchcliffe's case*, 1 Lewin C. C. 161; Cases Self-Defense, 125, 126; Gen. Stat., 778, § 5; Wag. Stat., § 5, 446. 3. The first instruction given for plaintiff was wrong, because there was no evidence that defendant acted wantonly, cruelly and in a spirit of hatred or ill-will. *Whalen v. Centenary Church*, 62 Mo. 329. 4. Plaintiff's second instruction should have been refused. Whether the fall of Morgan upon the pavement was accidental, or whether it was a natural and probable consequence

of defendant's act in striking him, was a question of fact for the jury. *Milwaukee, &c., Ry. Co. v. Kellogg*, 94 U. S. 474. 5. Plaintiff's third instruction should have been refused. Defendant was in his own house. He had the right to stay there and defend his possession by all necessary means, even to the taking of life. Most assuredly he was not responsible for an accidental killing of his assailant. *Pond v. People*, 8 Mich. 150; 1 Hilliard on Torts, pp. 201, 202; Cases on Self-Defense, p. 903, § 2; pp. 125, 126. 6. The seventh instruction asked by the defendant should have been given. It asserts that if Pressley G. Morgan could not have recovered against the defendant if he had lived, then the plaintiff could not recover. This is statute law, and it was material to the defense that the jury should have been so told. 1 Wag. Stat., § 3, 520.

SHERWOOD, C. J.—Action on behalf of Alonzo P. Morgan for damages for killing his father, Pressley G. Morgan. On trial had, a verdict was returned for $400, and judgment accordingly.

The deceased, who was in the habit of carrying concealed weapons, and had a well established reputation for being a turbulent, quarrelsome and dangerous man, and was, it seems, somewhat the physical superior of Durfee, entered the law office of the latter, to whom his reputation as a dangerous man was well known, in an apparently friendly manner, though he had just previously made threats in a saloon of his purpose to do him a serious injury. After some conversation, the deceased, Morgan, commenced an altercation with Durfee relative to some business matter, showered upon him the most opprobrious epithets, repeatedly refused to leave the office when told to do so, saying, " he would'nt go out until he got ready," and still continuing his vile abuse. Durfee, remarking to him, " Morgan, I intend you shall go out," pushed him backwards with his open hand, a step or two toward a safe which stood by the open door, when Morgan, seizing Dur-

fee by the throat and beard, and choking him with one hand so he could scarcely speak, and gesticulating violently with the other, pulled Durfee up to him and towards the door, and was in the act of threatening his life, when the latter, who had not touched Morgan but the once, reached out his hand toward the safe in order to steady himself, picked up a notarial seal and struck Morgan on the head, who, thereupon, released his grip on his throat and fell out of the door, and shortly thereafter died, either from the blow or the effect of the fall on the pavement, from the testimony, most probably the latter. Durfee's testimony, which is uncontradicted in any material particular by the only other eye-witness of the transaction, says, when his hand, in his effort to steady himself, fell on the seal he seized it by its lower part, raised it up and felt it coming over with force, which he resisted, as much as he could, but it struck Morgan's head; that when he struck with the seal he could scarcely breath; and that the blow was given at the time the threat before mentioned was uttered, and while Morgan was moving his hand up and down as if trying to get some weapon out of his pocket.

## I.

Upon the foregoing testimony, the court refused an instruction for the defendant that plaintiff was not entitled to recover. My opinion of this refusal is, that it was clearly erroneous; for it appears to me that few cases afford stronger grounds for successful resistance against an action for damage than the present one. Durfee had the unquestionable right to defend his office from ruthless intrusion, and his person against a battery then being inflicted, as well as threatened death. His right was, therefore, of a two-fold nature, defense of his habitation and defense of his person; and as coincident with that two-fold right he was invested by the first law of nature with authority to employ all the means within his reach, all the energies under his control, which the ap-

<small>1. THE RIGHT TO DEFEND ONE'S PERSON AND PROPERTY.</small>

parent necessity demanded, to expel the unwelcome and turbulent intruder, and protect himself against the murderous intentions of a desperate and dangerous man.

In *Hinchcliffe's case*, 1 Lewin C. C. 161 ; Cases Self-Defense, 125, upon an indictment for manslaughter, it appeared that the deceased and his servant insisted on placing corn in the prisoner's barn, which she refused to allow. They exerted force and a scuffle ensued, in which the prisoner received a blow in the breast, whereupon she threw a stone at the deceased and he fell down and was taken up dead. Holroyd, J., said : "This case fails on two accounts. It is not proved that the death was caused by the blow, and if it had been, it appears that deceased received it in an attempt to invade her barn against her will. She had a right to defend her barn, and to employ such force as was reasonably necessary for that purpose ; and she is not answerable for any unfortunate accident that may have happened in so doing." And under his lordship's direction the prisoner was acquitted.

The principle which dominates that case, it would seem, ought to control this one, unless it can be said that favorable presumptions attend the felling of a man with a stone, but unfavorable, with a notarial seal. That case is also authority for the exercise of the power by a trial court seldom brought into requisition, however, owing to a pitiable and painful weakness in the dorsal region, of directing a verdict for either party where the facts are undisputed and the witnesses unimpeached, or where the verdict, if returned for the opposite party, would be set aside as against the law and evidence. This doctrine is well established. Proffatt on Jur. Tr., §§ 351, 352, 354, and cases cited. This case falls, I think, clearly within the above mentioned rule ; and that its circumstances would well have warranted the verdict for the plaintiff in being set aside as the result of either passion or prejudice on the part of the triers of the fact ; for it is quite clear to my mind from the evidence that Durfee was either justifiable or excusable, since he

was engaged in a lawful act, and only doing what the apparent necessity of the case demanded ; and whether justifiable or excusable, the verdict should have been for him. *Hinchcliffe's case, supra*; 1 Wag. Stat., §§ 4, 5, 6, p. 446. It can scarcely be doubted that if the defendant had been tried for the homicide he should have been acquitted. If he should have been acquitted in such a case, then certainly in this the finding should have been in his favor.

. In *Pond v. The People*, 8 Mich. 150, a very well considered case, where the accused was tried for murder and found guilty of manslaughter, the death having occurred from a gun-shot wound, at the out-house of the prisoner where his servants slept, near his dwelling, and it was insisted that he was only charged with excusable or justifiable homicide, Campbell, J. remarked : " The first inquiry necessary is one which applies equally to all grounds of defense ; and is whether the necessity for taking life, in order to excuse or justify the slayer, must be one arising out of actual or imminent danger; or whether he may act upon a belief, arising from appearances which give him reasonable cause for it, that the danger is actual and imminent, although he may turn out to be mistaken. Human life is not to be lightly disregarded, and the law will not permit it to be destroyed unless upon urgent occasion. But the rules which make it excusable or justifiable to destroy it under some circumstances are really meant to insure its general protection. They are designed to prevent reckless and wicked men from assailing peaceable members of society, by exposing them to the danger of fatal resistance at the hands of those whom they wantonly attack and put in peril or fear of great injury or death ; and such rules in order to be of any value must be in some reasonable degree accommodated to human character and necessity. They should not be allowed to entrap or mislead those whose misfortunes compel a resort to them. Were a man charged with crime to be held to a knowledge of the facts precisely as they are, there could be few cases in which the most

innocent intention or honest zeal could justify or excuse homicide.      *      *      The prisoner who is to justify himself can hardly be expected to be entirely cool in a deadly affray, or in all cases to have great courage or large intellect; and he cannot well see the true meaning of all that occurs at the time; while he can know nothing whatever      *      *      concerning the designs of his assailant any more than can be inferred from appearances." These views are remarkably well expressed, and as I think, they are fully applicable to the undisputed facts in the present case,. I have only to reiterate my before-announced conclusion, that the case should never have been submitted to the jury, except with a direction to return a verdict for the defendant.

II.

Making the concession, however, that the case ought to have been submitted to the jury for consideration in the usual way, still the judgment should be reversed for errors otherwise committed in instructing the jury. There was error in the first instruction for plaintiff, because there was absolutely no evidence showing aggravating circumstances, nor that the blow "was wantonly and cruelly inflicted in a spirit of hatred or ill-will, and without reasonable provocation." If there were no aggravating circumstances attending the death, then exemplary damages were not allowable. Cooley on Torts, 44, and cases cited; *Whalen v. Centenary Church*, 62 Mo. 326; *Owen v. Brockschmidt*, 54 Mo, 285. In the case last cited, it was held that where there were aggravating circumstances, the jury should not be restricted to a mere question of dollars and cents. The obvious corollary from the adjudication in that case is, that where there are no aggravating circumstances, the jury should be restricted to the pecuniary or " necessary injury resulting from such death."

2. EXEMPLARY DAMAGES.

### III.

The second instruction for plaintiff was erroneous in that it held the defendant responsible, whether the blow or the fall, or both combined, caused Morgan's death. Defendant's act, if it was not a wanton, but a lawful one, that of resisting the force and violence of a hostile intruder, directed both against the person and possession of defendant, rendered him only responsible for the natural and probable consequences of his act; and not answerable for any unforeseen and unfortunate result which may have attended that act. *Hinchcliffe's case, supra*; *Railway Co. v. Kellogg*, 94 U. S. 469. Worded as the instruction was, the jury may well have concluded that though defendant was not guilty of any wanton wrong in giving the blow, yet that he was responsible therefor, unless entirely justifiable in inflicting it, whether the blow was or was not the direct or proximate cause of Morgan's death. Upon a like theory defendant would have been civilly liable had he given the blow with his open and unarmed hand. It should have been left to the jury to say whether the death of Morgan was accidental, or the natural consequence of the blow inflicted.

*3. LIABILITY FOR CONSEQUENCES OF OPPOSING FORCE TO FORCE.*

### IV.

The third instruction for the plaintiff was erroneous, because, while recognizing the right of defendant to use a deadly weapon in defense of his person against threatened danger of great personal injury, even to the extent of taking the life of his assailant, it utterly ignored and failed to give recognition to an equal right of defendant to do the same thing in defense of his office, which *pro hac vice* was as much his dwelling as the house ordinarily known by that appellation. And this right of defending one's dwelling is in some sense superior to that of the defense of his person; for in the latter case it is frequently the duty of the assaulted to flee,

*4. RIGHT TO DEFEND ONE'S PLACE OF BUSINESS.*

if the fierceness of the assault will permit, while in the former a man assaulted in his dwelling is not obliged to retreat, but may stand his ground, defend his possession, and use such means as are absolutely necessary to repel the assailant from his house, even to the taking of life. *Pond v. The People, supra,* and cases cited; 3 Greenl. Ev., §§ 65, 117; *State v. Patterson,* 45 Vt. 308; *Parsons v. Brown,* 15 Barb. 590.

And the instruction was also erroneous on another score. It told the jury, if there was reasonable ground to 5. MALICE.    apprehend great personal injury from the deceased, " and the defendant struck him with the seal to avoid such injury, and not in a spirit of malice or revenge, he was justifiable." It will be observed that the term " malice" is not defined; the jury were, therefore, left to construe it as they would. It is a legal term, and " understood to mean that general malignity and recklessness of the lives and personal safety of others which proceed from a heart void of a just sense of social duty and fatally bent on mischief." 3 Greenl. Ev., § 144. It would seem from the instruction that malice was regarded as the legal equivalent of revenge. This was an evident error; and even if properly regarded as meaning revenge, the instruction was erroneous as not having a particle of evidence to support it.

## V.

It is unnecessary to examine *in extenso* the instructions asked by defendant, since we have incidentally reviewed 6. AN INSTRUCTION most of those asked by him. The seventh instruction, however, asked on his behalf was properly refused; for it told the jury that if Pressley G. Morgan could not, had he lived, have recovered against defendant, then plaintiff could not do so. This, though true as a matter of law, had nothing to do with the case so far as concerned the jury.

## VI.

As above indicated, the statute under which this action was brought authorizes, where there are circumstances of aggravation, the recovery of vindictive, exemplary or punitive damages; and when such recovery is allowable, the pecuniary standing of defendant is an obviously proper subject of inquiry. But as there were no aggravating circumstances in this case, and consequently no vindictive damages recoverable, the opulence or poverty of defendant was not properly admitted in evidence.

<span style="font-size:small">7. EVIDENCE OF DEFENDANT'S WEALTH: exemplary damages.</span>

Judgment reversed and cause remanded. Judge HENRY concurs on the first point discussed; Judge NORTON concurs in the result; Judges NAPTON and HOUGH dissent.

REVERSED.