## THE STATE v. REED, Appellant.

### Division Two, February 6, 1900.

1. **Errors at the Trial:** NO EXCEPTIONS. Error of the trial court, not excepted to at the time, nor preserved in a motion for new trial and bill of exceptions, can not be considered on appeal, though presented by affidavits incorporated in the bill of exceptions.

2. **Instructions:** ERRONEOUS: CORRECT MUST BE GIVEN, WHEN. Though defendant's requests to charge in a criminal case were defective, he, having made such requests, is entitled to correct instructions on the subjects presented thereby. (State v. McNamara, 100 Mo. 100, overruled.)

3. ————: HOMICIDE: WORDS TO BE DEFINED. An instruction on excusable homicide, which does not define the expressions, "in the heat of passion," or "upon a sudden provocation," is erroneous.

4. **Homicide:** RESISTING INTRUDER OR TRESPASSER. The owner or occupier of a store or place of business need not retreat, if assaulted therein, but may, after the refusal of the trespasser to leave upon request, employ such force, short of inflicting death, as may be necessary to remove him from the building, and, if death results from a blow given under such provocation, the killing may be reduced to manslaughter.

5. ————: ————: INSTRUCTION. An instruction purporting to follow the language of Revised Statutes, section 3463, relating to excusable homicide "by accident in the heat of passion, upon a sudden provocation, or upon sudden combat, without taking any undue advantage and without using any dangerous weapon, and not in a cruel and unusual manner," is vitiated by the addition of the clause, "but insulting or offensive language, or a blow not made with a dangerous or deadly weapon, would not be a sufficient provocation to warrant defendant in taking deceased's life."

6. ————: INDICTMENT: VARIANCE. Where an indictment for homicide charged that death resulted from a blow of a pick, and several witnesses testified that death resulted from a fall on the pavement caused by a blow from defendant's fist, such evidence if true, constituted a fatal variance; and hence defendant was entitled to an instruction that, if the jury found such evidence to be true, they should acquit, though there was evidence to the contrary.

State v. Reed.

Appeal from Jackson Criminal Court.—*Hon. D. W. Shackleford*, Special Judge.

REVERSED AND REMANDED.

*Blake L. Woodson* and *Ralph S. Latshaw* for appellant.

(1) Had the defendant any rights in his store or place of business, with reference to the conduct of the deceased, John Faulk, that he would not have had elsewhere? If so, the court should have given instructions as asked by the defendant and should not have obscured these special rights as the court did do in paragraph 7 of the given instructions. State v. Taylor, 143 Mo. 150; State v. Kermade, 121 Mo. 405; State v. Pollard, 139 Mo. 220; Morgan v. Durfee, 69 Mo. 469. (2) The defendant's 8th instruction, abundantly sustained by the evidence in this cause, refers to an unintended killing, incident to the assault. The court's qualification has reference only to an intended killing on account of offensive language or a blow on the part of the deceased. (3) To remove from the jury every possible consideration of the death of Faulk resulting from accident or misfortune incident to the assault, the court refused to give defendant's third instruction. Plummer v. State, 4 Tex. App. 318; Aaron v. State, 31 Ga. 167; State v. Benham, 23 Ia. 154; U. S. v. Clark, 31 Fed. Rep. 710; Wharton Hom. (2 Ed.), sec. 470; State v. McNally, 87 Mo. 658; State v. Sims, 68 Mo. 305; State v. Mitchel, 64 Mo. 191; State v. Crabtree, 111 Mo. 140; State v. Berkley, 92 Mo. 41; State v. Thomas, 78 Mo. 338; State v. Christian, 66 Mo. 143; 9 Am. and Eng. Ency. of Law (1 Ed.), 539 and 540; Ayers v. State, 60 Miss. 709.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Instruction numbered 7, given by the court on its own motion, fails to meet the approval of the defendant.

There is practically no difference between this instruction and the one asked for by the defendant on the same subject. This instruction is practically the same as given and approved by the court in the case of State v. Taylor, 143 Mo. loc. cit. 157. The court in that case fully considered the question involved in the instruction. Kelley's Crim. Law, sec. 516. (2) Defendant objects to the latter part of instruction numbered 8, for the reason that it is an improper qualification of the instruction and has reference to the intended killing on account of offensive language or blow on the part of the deceased. The jury was entitled to these qualifications. It was proper in every respect, has been time and again approved by this court, is subject to no objection urged against it, and can not under any circumstances be said to constitute reversible error.

SHERWOOD, J.—To a charge made against defendant of murder in the first degree, the jury returned a verdict of murder in the second degree, assessing the punishment at its minimum, 10 years in the penitentiary.

The story of the occurrence made the subject of indictment, is substantially this: Defendant kept a second-hand store where he bought, sold, and sometimes exchanged such articles as are usually kept in such establishments. He was a man nearly 64 years of age and wore glasses. Faulk, the other person mentioned in the indictment, was a laborer some 34 years old. He had been a frequent customer of defendant's and for articles purchased had been given credits by defendant to the amount of small sums and other little accommodations of that kind from time to time, which, it seems, produced in the end the average yield of that crop called *gratitude*. The latter part of June, 1898, Faulk bought a stove of defendant and the latter agreed that he would allow Faulk $3 on the purchase, to be paid with an old stove that Faulk had at home, provided it corresponded to the description which Faulk, in making the bargain, gave of it. So, Faulk took his purchase

home with him, and the next day sent down to defendant's store the old stove aforesaid. This article, however, defendant soon discovered did not answer its bargained description; was in short, almost, if not entirely, worthless. Upon this, defendant wrote Faulk a note notifying him of the difference between the stove and its description and requested him to come around and arrange matters. Faulk answered this note in person along about 4 or 5 o'clock in the afternoon of June 30, 1898.

Arriving there, Faulk and defendant went through the store to the back part to examine and talk over the dispute-producing stove. Having concluded their inspection, Faulk and defendant returned to the front part of the store where the conversation was renewed about the stove, Faulk insisting that he should be allowed $3 credit for the old stove, and when defendant declined to do this, declared he would pay nothing; and as he was in the condition that one witness terms "fighting drunk," became excited over the matter, called defendant a son of a b—— and other vile names; struck and tried to choke him, and when defendant ordered him out of the store, said "I will leave when I get ready," and struck at defendant with his dinner pail, knocking his glasses off, when defendant, greatly excited by Faulk's insults and blows, in the endeavor to enforce his order struck Faulk with his fist alone, and pushed him at the same time, and Faulk with his face towards defendant and his back to the front door close to which he was, fell backwards on to the asphalt sidewalk, and received such a wound on the protuberance or occipital bone as resulted in a fracture of that part of the skull and his death in a few moments. Just at the outside of the front door was a lawn mower, chain, and a grubbing hoe and pick; the two last named without handles were lying on the sidewalk. Faulk's feet, as he backed out of the door became entangled and he fell over the lawn mower, breaking a portion of it off. The foregoing facts are testified to by Root who was present

in the store right close by the contending parties, by Hayes who stood on the sidewalk, only four feet wide, at the front door and watched the controversy from its inception, and by defendant himself.   As to what occurred in the store, there is no dispute, certainly up to the time of the blow which defendant struck Faulk, which caused his fall out of the door, some of the witnesses for the State asserting that they saw this blow struck by defendant with an unhandled pick on the back part of Faulk's head, while he was going out of the door with his face to the street.

Two physicians, the coroner and his deputy stated the blow was given by some blunt instrument, and that it could not be done by a simple fall on an asphalt pavement.    The question was not asked any witness, lay or professional, whether the fracture could not have been caused by Faulk's falling on the pick as it lay on the sidewalk.

In this case we are foreclosed, and with a strict foreclosure, from passing on the action of the trial court in relation to impanelling jurors; and as to giving time to defendant's counsel to consult together before introducing evidence on behalf of their client, since none of these matters were excepted to at the time of their occurrence, and such exceptions set forth in the motion for a new trial and preserved in the bill of exceptions; and the fact that affidavits were made and incorporated in the bill of exceptions in order to preserve the matters aforesaid, does not have any such preservative effect, as has been so often decided by this court.    When the lawyers of this State will learn this simple rule of procedure is unknown.    A few cases on the subject may not be unimpertinent: [State v. Hayes, 81 Mo. 574; State v. Musick, 101 Mo. loc. cit. 273; State v. Brewer, 109 Mo. loc. cit. 652; State v. Blunt, 110 Mo. loc. cit. 340; State v. Howard, 118 Mo. loc. cit. 145 et seq.; City of Tarkio v. Cook, 120 Mo. loc. cit. 11.]

But exceptions were saved by defendant to the giving

of all of the State's instructions and to the refusal to give certain instructions asked by him. The instructions on the part of the State so far as necessary to quote them, are the following:

Par. 7. "If you find from the evidence that the deceased went to the defendant's place of business and that there a dispute arose between them in which the deceased assaulted the defendant or used opprobrious epithets or threats toward him, then the defendant had the right to order and eject the deceased from said premises by whatever force or means as were reasonably necessary, short of taking his life or doing him some serious bodily harm, and if the defendant in lawfully ejecting him from said store-house or place of business killed him without the use of any deadly weapon and without taking any undue advantage of him and without using any cruel and unusual manner towards him, then you must find the defendant not guilty."

"8. If you find that the defendant by accident in a heat of passion upon sudden or sufficient provocation or upon sudden combat without taking any undue advantage and without using any dangerous weapon and not in a cruel and unusual manner killed John Faulk you will acquit him [but insulting or offensive language or a blow not made with a dangerous or deadly weapon would not be a sufficient provocation to warrant the defendant in taking the deceased's life.]"

"15. If you find from the evidence that at the county of Jackson and State of Missouri at any time within three years before the seventeenth day of October, 1898, the defendant without intending to produce death wrongfully killed John Faulk by means neither cruel or unusual in a heat of passion you will find him guilty of manslaughter in the fourth degree and assess his punishment at imprisonment in the penitentiary for not more than two years, or at imprisonment in the county jail not less than six months, or by a fine of not

less than five hundred dollars or by both a fine of not less than one hundred dollars and imprisonment in the county jail not less than three months."

There were also instructions given on the same side, as to murder in each degree. These quotations and statements are sufficient to show the theory on which the State tried the cause.

On behalf of defendant the following instructions were asked and refused:

"1.  The jury are instructed that in law every man has charge of his own house as well as his own shop, store or place of business and has the further right to reasonably regulate and control the same against all other persons whomsoever. If, therefore, the jury shall believe and find from the evidence that a dispute or difficulty arose between the defendant and the deceased at the time mentioned in the indictment, in the store-room or place of business of the defendant, in which the deceased assaulted the defendant or used insulting or opprobrious epithets or threats toward the defendant, then the defendant had the right to order and eject the deceased from said premises, by whatever force or means were reasonably necessary, short of taking his life or doing him some serious bodily harm; and if the jury further believe under the evidence in this case that the defendant in lawfully ejecting the deceased from defendant's store-house or place of business, killed the deceased without the use of any deadly or dangerous weapon and without taking undue advantage of him and without using any unusual manner towards him, then your verdict should be that the defendant is not guilty."

"2.  The jury are instructed that if they shall find and believe from the evidence that at the time and place charged in the indictment the defendant assaulted and killed the deceased John Faulk in a heat of passion upon a sudden provocation, or upon a sudden combat, without any undue advantage being taken of said Faulk and without using any dan-

gerous weapon upon him, and not in a cruel and unusual manner and that said John Faulk was by accident or misfortune killed by defendant in such assault so made upon him by defendant, then your verdict should be that the defendant is not guilty, because the killing done under such circumstances is excusable in law."

"3. Under the law governing this case, if the jury shall find and believe from the evidence that the deceased, John Faulk, came to his death in any manner, or by any means other than by the direct force and violence of the defendant to said Faulk, then they should not find the defendant guilty of murder in either the first or second decree."

As to the alleged modifications of defendant's instructions 1 and 2 by giving instructions 7 and 8 for the State, it suffices to say there was no exception saved to such modificatory act, did it occur, and that affidavits can not preserve the memory of such occurrences.

Defendant's refused instructions, already copied, though faulty, may however be used as bases upon which to build such instructions as may be free from fault. The right to have correct instructions given when incorrect ones are asked by the defense, was the settled law of this court for many years, never mooted, doubted or denied until State v. McNamara came up here, 100 Mo. 100, now expressly and happily overruled in State v. Clark, 147 Mo. loc. cit. 38.

The second instruction refused defendant, is objectionable in that it does not define the meaning of the expression, "in the heat of passion," nor "upon a sudden provocation," nor do the State's instructions, though employing these and similar expressions, give them definition. Such failure in instructions to explain the meaning of such expressions, has uniformly been held erroneous. [State v. Strong, 153 Mo. 445, and cases cited.]

There is no doubt that an owner of a store-house or premises may order another, whether a trespasser or intruder

State v. Reed.

or not, to leave the premises or store-house which such owner occupies, although no provocation whatever be offered, and may enforce such order by all appropriate means and force, and *a fortiori* may he do so, when provocation occurs, whether slight or great. The only importance, in most instances, to be attached to the provocation, when offered, is as to its sufficiency to generate hot blood. And we have ruled that a lawyer's office is *pro hac vice* his dwelling house, and that if assaulted therein, he may rely on the building as his castle, from which he need not retreat, but may stand his ground, and employ such force, short of inflicting death on his opponent, as may be necessary to expel him from the building. [Morgan v. Durfee, 69 Mo. 469.]

The same considerations which apply to a dwelling house apply with equal appropriateness to a lawyer's office, and to the store, or shop of a tradesman. In Hinchcliffe's case, 1 Lewin C. C. 161, the building in question was a barn, and upon an indictment for manslaughter, it appeared that the deceased and his servant insisted on placing corn in the prisoner's barn, which she refused to allow. They exerted force, and a scuffle ensued in which the prisoner received a blow in the breast, whereupon she threw a stone at the deceased and he fell down and was taken up dead. HOLROYD, J., said: "This case fails on two accounts. It is not proved that the death was caused by the blow, and if it had been, it appears that the deceased received it in an attempt to invade her barn against her will. She had a right to defend her barn, and to employ such force as was reasonably necessary for that purpose, and she is not answerable for any unfortunate accident that may have happened in so doing." And under his lordship's direction the prisoner was acquitted.

In none of the instructions asked by defendant does the thought or theory appear as to the effect to be given to the conduct of defendant if he actually used the pick in striking the fatal blow, provided he did so in hot blood, produced by the

provocations already related.   In such circumstances the law is well settled that if without express malice and when provocation by a blow has created hot blood, the person thus provoked, before his blood has had time to cool, seizes a lethal weapon and slays his adversary, the crime rises to no higher grade than manslaughter in the fourth degree.   [Wharton, Hom., secs. 430, 431; 2 Bishop, New Crim. Law, sec. 699; 1 McClain, Crim. Law, secs. 336, 339 and cas. cit.; State v. Bowles, 146 Mo. loc. cit. 15; 2 Roscoe's Crim. Evid. (8 Ed.), 966 et seq.]

Even an intentional killing done with a deadly weapon in hot blood and without malice, is only manslaughter.   [State v. Hill, 4 Dev. & B. (N. C.), 491; State v. McDonnell, 32 Vt. loc. cit. 541 and it is but manslaughter at common law, 1 East P. C. 233, 234, 235; 4 Bl. Com., 191; 2 Bishop New Crim. Law, secs. 695, 697, 699, 701.]

The principle just announced in relation to manslaughter is entirely distinct from that relating to homicide by misadventure or through accident or misfortune, as well as excusable or justifiable homicide; and while it is true "a blow not made with a dangerous or deadly weapon would not be a sufficient provocation to warrant the defendant in taking the deceased's life," yet it is equally true that such weaponless blow if it caused hot blood, might reduce what otherwise would be murder to mere manslaughter, although in response to such blow defendant seized and used on his adversary a deadly weapon.

Recurring to the question of provocation, every owner or occupier of a building is entitled to at least civil treatment from those who come therein not having the legal right to be or to remain there; and if any such person fail to behave towards the owner in a becoming manner, the latter may, after an order or request to depart, lawfully eject such person from such building, not using any excess of force, or such as to cause the death of such person, who would become a trespasser *ab initio* after refusing to leave upon order or request so to do.

And it probably might be the case, that should a struggle arise between proprietor and intruder as aforesaid, that without blows given or exchanged, the mere struggle might be of such a nature as to generate hot blood, to wit, by the resistance offered by the intruder to the proprietor in the exercise on the part of the latter of his lawful right of expulsion. For these reasons an instruction should have been given embodying the thought that a blow with a pick given by defendant to Faulk, after defendant had received the provocations mentioned in the instructions, or had ordered Faulk to leave and the latter refused to do so, and defendant endeavored to enforce his order and while in the endeavor and struggle to do so, and in hot blood and without express malice, struck and killed Faulk with a pick, such killing would be only manslaughter in the fourth degree.

Our statute declares that homicide shall be deemed excusable when committed by accident or misfortune in either of the following cases: "Or, second, in heat of passion, upon any sudden or sufficient provocation, or upon sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel and unusual manner." [Section 3463, Revised Statutes 1889, now section 1819 of the Revision of 1899.]

It is asserted by counsel for the State that instruction number 8 of the instructions given for the State, supplies any lack caused by the refusal of defendant's instruction number 2. Each of those instructions evidently intended to follow the section of the statute already quoted, but number 2 comes closer to the statute than does number 8, for the latter is objectionable because of adding near its close these words which have been placed in brackets: "But insulting or offensive language or a blow not made with a dangerous or deadly weapon would not be a sufficient provocation to warrant the defendant in taking the deceased's life." These added words are plainly incongruous with the rest of that instruction, and

treat of a different idea altogether; the first part of the instruction treating of an excusable homicide occurring by accident or misfortune upon sudden or sufficient provocation, or sudden combat, without any undue advantage or dangerous weapon used, and not done in a cruel or unusual manner, while the bracketed words clearly relate to a case where a homicide has occurred, not by reason of accident or misfortune, not in the heat of passion, but in circumstances where insulting or offensive language or a weaponless blow would not be a sufficient provocation to warrant defendant in taking deceased's life. The word "sufficient" as used in the addendum to the instruction evidently means "lawful," but there is no such idea as "lawful provocation" contained in section 3463, nor in the fore part of instruction 8. That section and that part of the instruction relate to accidental noncriminal, nonpunishable, excusable homicide, while the addendum to the instruction, relates to criminal and punishable homicide and to matters which would neither abate nor justify such criminality. The addendum thus creates a clear departure from the text of the instruction and section, and consequently makes the instruction misleading and therefore vicious.

Passing now to the consideration of defendant's 3d refused instruction, it is proper to say that though incorrect and therefore properly refused, it contains in a nebulous vague kind of way as though seen "through a glass darkly," a germ of truth.

The indictment charges the homicide to have been done by the direct blow of a pick, and some of the evidence supports this charge; but, on the other hand, the evidence of three witnesses, two of them entirely disinterested and all of them unimpeached, shows that death resulted from a fall on the asphalt pavement, and this fall from a blow of defendant's fist. It is quite obvious that if the testimony of the three witnesses just mentioned be true, then the charge in the indictment is not supported. This view of the case finds illus-

tration as follows:   Where an indictment charged that the prisoner struck the deceased with a piece of brick, and it appeared probable, not that the prisoner struck with the brick, but that the prisoner struck with his fist, and that the deceased fell from the blow upon the piece of brick, and that the fall on the brick was the cause of the death; it was held, upon a case reserved, that, as the indictment did not contain a charge of throwing the deceased down, the prisoner ought to have been acquitted.   Rex. v. Kelly, 1 Moody's C. C. 113; s. c. 1 Lewin's C. C. 193.   So, where the indictment charged the death by striking and beating on the head, and the evidence was that the prisoner knocked the deceased down by a blow upon the head, and that in falling upon the ground the deceased received a mortal wound; it was held, upon a case reserved, that the cause of death was not truly stated.   [Rex v. Thompson, 1 Moody's C. C. 139; s. c., 1 Lewin's C. C. 194.] So, where the indictment charged the wound to have been inflicted by a blow with a hammer held in the prisoner's hands, and the injury might have been occasioned by a fall against the lock or key of a door; it was held, that if the injury was occasioned by a fall against the door, produced by the act of the prisoner, it was not sufficient, but if the injury was occasioned by a blow with a hammer or any other hard substance held in the hand, the indictment was proved.   [Rex. v. Martin, 5 C. & P. 128, Parke, J.]   So, where the indictment alleged the death to have been caused by striking and the jury found it was caused by overexertion in the fight, the judges held the prisoner entitled to an acquittal.   [Brown's case, 1 Lewin's C. C. 165, cited by HULLOCK, B., 1 Arch., Crim. Pro. (8 Ed.), p. 788.   To the like effect.   1 Whart., Crim. Law (10 Ed.), sec. 519; 1 McClain, Crim. Law, sec. 377.]

Under these authorities, if the testimony of the three witnesses already mentioned be true there was a fatal variance between the charge in the indictment and that testimony,

hence it was necessary to give an instruction embodying the idea already announced.

The charge in the indictment was of a direct blow with a pick which effected the death of Faulk, while the testimony of the three witnesses for the defense showed death to have indirectly resulted from a blow of the fist and a fall on the pavement. And the fact that there was testimony of a contrary effect did not oust nor toll the right of defendant to have a proper instruction based on testimony which contradicted the charge made in the indictment.

For the errors aforesaid, the judgment is reversed and the cause remanded. All concur.