Norris v. Whyte.

---

## NORRIS v. WHYTE, Appellant.

Division One, June 30, 1900.

1. **Assault and Battery:** INSTRUCTIONS. In a civil action for assault and battery, where there was evidence tending to show that the injury complained of was received while defendant was trying to eject plaintiff from defendant's store, and where the instructions given on behalf of defendant correctly declared his right to eject plaintiff under certain circumstances, and to use such force as was necessary for that purpose, *held,* that an instruction for plaintiff, when read in connection with defendant's instructions, was not erroneous, which directed a·verdict in his favor unless he first made an attack on defendant, defendant's instructions defining the word "attack" by saying "if the plaintiff made a move to strike the defendant with his hand, then such movement was an assault upon defendant although the blow may have been intercepted or failed to reach the defendant."

2. **Improper Remarks of Counsel:** EXCEPTIONS. If a reversal is asked on account of improper remarks of counsel in argument, the facts in relation thereto must be stated in the bill of exceptions, as part of the proceedings in the case. Such remarks can not be made part of the record by affidavits filed in support of a motion for new trial.

3. **Excessive Damages.** The judgment in this case for $7,000, awarded to plaintiff as actual damages for one blow in the face by defendant's fist, struck without malice in the ordinary sense, and for consequent injuries resulting therefrom, is reversed and the cause remanded because the verdict is so excessive as to shock the judicial sense of right.

Appeal from Jackson Circuit Court.—*Hon. John W. Henry*, Judge.

REVERSED AND REMANDED.

*Chas R. Pence* and *Scammon, Mead & Stubenrauch* for appellant.

(1) Where damages awarded by the jury are excessive and unwarranted, the Supreme Court will award a new trial. Goetz v. Ambs, 22 Mo. 170; Sawyer v. Railroad, 37 Mo. 241; Furnish v. Railroad, 102 Mo. 148; Johnson v. Railroad, (Minn.) 69 N. W. Rep. 900. (2) Upon plaintiff's own showing this case should be reversed on account of misconduct of counsel in argument. Gibson v. Zeitig, 24 Mo. App. 66; Norton v. Railroad, 40 Mo. App. 642; Ensor v. Smith, 57 Mo. App. 584; Smith v. Western Union Tel. Co., 55 Mo. App. 626; Williams v. Railroad, 123 Mo. 573; State v. Lee, 66 Mo. 165. (3) That plaintiff is turbulent or the defendant quiet in disposition, is not competent evidence in an action for assault and battery; in such action the character of the plaintiff is not in issue. Smithwick v. Ward, 75 Am. Dec. 453.

*Joseph S. Brooks* and *Karnes, New & Krauthoff* for respondent.

(1) It is contended by counsel for defendant that "where damages awarded by the jury are excessive and unwarranted, the Supreme Court will award a new trial."

Norris v. Whyte.

This is not the true rule. The mere fact that an appellate court may regard the damages as excessive, does not warrant a reversal. Traber v. Hicks, 131 Mo. 180; Leahy v. Davis, 121 Mo. 227; Boggess v. Railroad, 118 Mo. 328; Dowd v. Westinghouse Air Brake Co., 132 Mo. 579; Weinberg v. Railroad, 139 Mo. 286; Hollenbeck v. Railroad, 141 Mo. 97; Liese v. Meyer, 143 Mo. 547; Hartpence v. Rogers, 143 Mo. 623; Morgan v. Ross, 74 Mo. 318; Berkson v. Railroad, 144 Mo. 211; Fullerton v. Fordyce, 144 Mo. 519; Railroad v. George, 145 Mo. 38; Nichols v. Nichols, 147 Mo. 387; Oglesby v. Railroad, 150 Mo. 137; Chouquette v. Railroad, 53 S. W. Rep. 897. (2) "Mere words, no matter how abusive they may be, can not justify an assault." Murray v. Boyne, 42 Mo. 472; State v. Griffin, 87 Mo. 608; State v. Gamble, 119 Mo. 433. (3) In respect to the alleged improper remarks of counsel, the bill of exceptions fails to show any exception thereto, or any request of the court to order counsel to desist. No mention is made of the alleged improper remarks until the filing of the motion for new trial and affidavits in support thereof. State v. Forsythe, 89 Mo. 667; State v. Howard, 118 Mo. 127; Wilson v. Taylor, 119 Mo. 626; State v. Underwood, 76 Mo. 630; State v. Sanders, 106 Mo. 188; State v. Reed, 154 Mo. 122; State v. Hayes, 81 Mo. 574; State v. Blunt, 110 Mo. 322; City v. Cook, 120 Mo. 1; State v. Steen, 115 Mo. 474; State v. Duncan, 116 Mo. 288; State v. Welsor, 117 Mo. 570; State v. Bulling, 105 Mo. 204; State v. McDaniel, 94 Mo. 301.

MARSHALL, J.—Action for an assault and battery. The damages are laid in the sum of ten thousand dollars, of which five hundred dollars is claimed for medical attention and medicines, and five hundred dollars for time lost.

The petition charges that the assault and battery occurred on the ———— day of September, 1896, and avers that the bones of the plaintiff's face were broken, his eyesight nearly destroyed, concussion of the brain and paralysis produced, besides other wounds and bruises inflicted. The answer is a general denial and a special plea that the plaintiff came into defendant's store in Kansas City, and without justification used loud, boisterous and profane language; that the defendant asked him to desist therefrom, but instead of so doing the plaintiff assaulted the defendant, and that defendant repelled such assault and "made no assault upon said plaintiff except as aforesaid in self-defense."

The reply is a general denial.

The plaintiff, an occulist by profession, but a fruit raiser by occupation, for years had been selling fruit to the E. Whyte Grocery, Fruit and Wine Company. On the morning of September 14, 1896, the plaintiff left his home near Westport to go to the Whyte store to sell some apples and grapes. He says he can remember nothing that happened from the time he reached the curbstone at said store until a month afterwards, when he found himself in bed at home. The plaintiff's case as to the alleged assault, therefore, rested upon the testimony of Paul Burns, fifteen years old, and Harry L. Rhodes, sixteen years old, who were at that time employed as cash boys in the Whyte store, but who after remaining about six months and three months, respectively, in such employ, severed their connection therewith and appear in this case as the sole witnesses for the plaintiff to his claim. Their testimony is substantially the same, and is to the effect that the plaintiff came into the store during the morning hour of September 14, 1896, and was talking to the elder E. Whyte, the father of the defendant, who was standing at a desk behind the counter, when Whyte called the plaintiff "a dirty old scalawag," as Burns puts it,

or "an infernal scamp," as Rhodes puts it; that the plaintiff replied, "You are a damn liar," and that thereupon the defendant, who was about ten or fifteen feet away, walked over to the plaintiff and without any talk or warning or provocation or any thing done or attempted to be done by the plaintiff, struck the plaintiff a violent blow with his left hand on the left cheek, just below the eye, which knocked him down and rendered him insensible, and that he was then carried to the rear of the store and laid on some sacks and a doctor sent for, and that he was carried from the store some hours afterwards. Rhodes fixes the time at 11:23 a. m., and says he knows it because Miss Duvall, who had charge of the cigar stand, asked him the time and he looked at the clock in the back part of the store. On this point however he is flatly contradicted by Miss Duvall, who says nothing of the kind took place, and further says there was no occasion for her to ask Rhodes the time, as there was a clock at the front of the store in full view of where she stood.

The testimony of these two boys as to the alleged assault is contradicted by the defendant, James Foster, George Foster, Arthur Hoisman (clerks in the Whyte store) and E. Whyte, Sr., all of whom testify that E. Whyte, Sr., did not call the plaintiff "a dirty old scalawag" or "an infernal scamp," but that the plaintiff in a loud voice said to E. Whyte, Sr., "You are a God-damned liar" and that thereupon the defendant walked towards plaintiff, and plaintiff turned partially around and made a motion to strike the defendant, who threw up his right hand to guard himself and at the same time struck the plaintiff one blow with his left hand, but it is not clear whether he struck him on the cheek, the mouth, the neck or behind the ear.

The plaintiff's testimony and that of his expert medical witnesses is that he suffered a concussion of the brain, fol-

lowed by a "partial paralysis of a branch of the facial nerve involving the eyeball and eyelid, causing a drooping of the eyelid, called ptosis and also what we call motor-oculi paralysis," and that later "the ptosis was overcome partly; he had partially recovered from that, but the ocular muscles, that is, the recti and oblique muscles that move the eyeball proper, were still in a state of paralysis, and the eyes wouldn't move in harmony; there was a want of fixation by which the eyes focus the distance of an object; upon the exclusion of light from one eye he can bring the other eye in focus, but he can't move this injured eye in focus because of oxophodia; objects appear confused and double, causing diplopia or two objects." All of which appears from the record to have been so clear and plain to the counsel, jury and court that no more explicit explanation was asked, but which appears, as nearly as can be gathered from the testimony, to mean that a nerve on the left side of the face was injured, which caused the eyelid to droop, and disturbed the plaintiff's capacity to measure distances and caused him to see double.

The plaintiff testified that prior to the assault, he was healthy and active, although about sixty-five years old, and that since the accident he is weak and feeble and unable to go about by himself, and he had to be assisted when he walked. On the other hand there was evidence offered by the defendant tending to prove that when not in court he went around by himself, without assistance.

The plaintiff's witnesses (Burns and Rhodes) say that the plaintiff had been in the Whyte store once before on the same day the alleged assault took place, but they give no account of what took place then. The only explanation of that visit and the causes that led up to the difficulty that the record affords is that given by E. Whyte, Sr. He says the plaintiff came into the store about nine o'clock in the

morning and wanted to sell some apples, and he told him his apple buyer was out of the store, but would return in a short time and asked him to take a seat and wait; that plaintiff did so, but soon became impatient and came to his desk and asked if his son had returned, and thereupon he told plaintiff he had not returned, but asked him about the quality and price of the apples and plaintiff told him they were "Brother Jonathans," and were worth fifty cents a bushel, and that he had fifteen bushels of them. So he agreed to buy them and the plaintiff agreed to deliver them the latter part of the next week, and the plaintiff left. He returned, however, about an hour later and told Mr. Whyte he could not let him have the apples, and when asked why, said Mr. Garth would give him ten cents a bushel more for them than he had agreed to sell them to Mr. Whyte for, and that ten cents was a good deal to him. Mr. Whyte then said he could sell Mr. Garth all the apples he chose, but he would expect him to deliver the fifteen bushels to him, and when the plaintiff said he would not do it, he said, "Well, when you make contracts and don't intend to keep them, then you must go out of here and not come in again," adding, when plaintiff began to move slowly away, "Hurry up." Then the plaintiff turned and said to Mr. Whyte, "You are a God-damned liar." Then the difficulty hereinbefore detailed occurred.

The jury returned a verdict for the plaintiff for seven thousand dollars. In due time the defendant filed a motion for a new trial, which being overruled, he appealed.

The defendant assigns as errors: 1st, that the damages are so excessive that they evidence passion and prejudice; 2nd, that plaintiff's counsel made improper remarks to the jury in his closing argument; 3rd, error in giving and refusing instructions.

We will consider these objections in their inverse order.

## I.

The defendant contends that the trial court erred in giving the first instruction for the plaintiff and in refusing the eighth instruction asked by defendant. Those instructions are as follows:

"1. If the jury believe from the evidence that the defendant violently struck and beat the plaintiff, then your verdict will be for the plaintiff, unless you further believe from the evidence that plaintiff first made an attack upon defendant, and that defendant resisted such attack, using no more force than was necessary to repel it.

"8. The right of self-defense is derived from nature; to repel force by force is the common instinct of every creature that has means of defense. Sudden and strong resistance to unrighteous attack is not merely a thing to be tolerated; in many cases it is a moral duty. Municipal law has left to individuals the exercise of this natural right of self-defense in all cases in which the law is either too slow or too feeble to stay the hand of violence; and it is to be considered that a man repelling imminent danger can not be expected to use as much care as if he had time to act deliberately."

To appreciate the force of the objection it is necessary to understand what the court did tell the jury in the other instructions given. The other instructions given for the plaintiff are as follows:

"2. Although the jury may believe and find from the evidence that the plaintiff received injuries in consequence of falling upon the floor or upon some object upon the floor, yet if you find for the plaintiff, he is entitled to compensation for injuries thus received to the same extent as if they had been inflicted directly by the blow of the defendant.

"3. If the jury find for the plaintiff they will assess his damages at such sum as will compensate him for all injuries, if any, he has sustained, also for all bodily pain and mental anguish he has suffered, if any, the whole not to exceed the amount of ten thousand dollars as claimed in the petition."

For the defendant the court instructed the jury as follows:

"1. The jury are instructed that while the keeping of a store for the sale of merchandise is an invitation to the public to visit such store, it is an invitation to visit it only for proper purposes in connection with the business there being carried on, and all persons going to such places are required to conduct themselves in a proper, orderly and quiet manner, free from profane and loud and boisterous language; and where a person, having entered a store, engages in such loud, boisterous and profane language, or invites a quarrel, he becomes a trespasser upon the premises and may be requested to withdraw by the proprietor or any person in his employ.

"2. And in case such trespasser refuses to withdraw, he may be forcibly removed, using such force as may be necessary for that purpose.

"3. I further instruct you that if you find from the evidence that the witness Norris entered the defendant's store and engaged in loud, angry and profane language, then the defendant had the right to direct him to stop the use of such language and quit the premises; and if you find from the evidence that upon being requested to stop the use of improper language or to withdraw, the witness Norris made a move to strike the defendant with his hand, then such movement was an assault upon the defendant, although the blow may have been intercepted or failed to reach the defendant.

"4.   And if you find that Norris did make such an offer to strike the defendant, then in that case, the defendant being upon his own premises, was not obliged to retreat, but he had the right then and there to repel such attack with a blow, using all the force necessary to cause Norris to cease his assault.   The party assaulted in such a case is not required to use any close or nice calculation to determine just exactly the degree of force necessary, not overstepping such measurement a hair's breadth on either side, but he may use all such force as a reasonable, prudent man under like circumstances of excitement and danger would use to repel such an assault.

"5.   And in case you find the defendant was justified in striking the plaintiff Norris, then in that case he is not to be charged with any unusual or unlikely result which may have in fact followed the blow given in this particular case. By this is meant, that, if you should find that by reason of any  peculiar physical condition existing at the time in Norris which was not apparent to Whyte, and would not be apparent to persons of ordinary observing disposition, the blow struck in this case carried with it consequences and results that were unusual and beyond those which are ordinarily to be expected from such a blow, then in that case the mere unusual severity of the consequence will not make that liability to damages in the defendant which would not have been such liability had the blow been followed by only such consequences as might reasonably have been expected.

"6.   The law permits every man to defend himself when wantonly assailed; and in such defense it requires of him only such prudence as is common among ordinarily careful men; and if unusual and not-to-be-expected results follow from a defense so made, the original wrongdoer and aggressor must suffer for them and not he who only en-

gaged in his own defense and could not reasonably have foreseen such unusual results.

"7.   If a person wilfully trespasses upon the premises of another, and while so trespassing assaults the owner thereof, and the owner while defending his person from such assault inflicts an injury upon the party thus making such assault, the party thus injured can not recover damages for the injury so received."

The objection to the plaintiff's first instruction is solely to its use of the word "attack," and the point made is that it was calculated to mislead the jury and to cause them to believe that they must find that the plaintiff made an "attack" upon the defendant before he struck him, whereas it was only necessary for the defendant to show, as he did, that he had a right to eject the plaintiff, using such force as was necessary to do so, and that when he attempted to do so the plaintiff struck at the defendant, and the blow of the defendant was given in self-defense.

The very clear and exhaustive instructions given at the request of the defendant, defined the rights of the defendant with respect to ejecting persons from the store, with the amount of force that might be employed in so doing, and with reference to self-defense, and with reference to the character of damages and the amount thereof the defendant might be charged with, and those instructions are fully supported by the decisions of this court. [Morgan v. Durfee, 69 Mo. 469; State v. Reed, 154 Mo. 122.]   The third instruction given for the defendant, told the jury that if they found that the plaintiff entered the store and used loud, angry and profane language, the defendant had a right to direct him to stop using such language and to quit the premises, but that if instead of doing so "the plaintiff Norris made a move to strike the defendant with his hand, then such movement was an assault upon the defendant although

the blow may have been intercepted or failed to reach the defendant." This instruction left no room for the jury to misunderstand what kind of an "attack" was referred to in the plaintiff's first instruction, and read together the word "attack" in the plaintiff's first instruction and the word "assault" in the defendant's third instruction convey the same idea, that is, as the defendant's third instruction defines it, a motion of the hand to strike the defendant, even though the motion or movement falls short of actual contact. There was, therefore, no error in giving the plaintiff's first instruction.

The eighth instruction asked by the defendant and refused by the court, is correct as an abstract proposition of law, and might be given in any case of assault and battery where a plea of self-defense is interposed. The difficulty, however, is that it is not specific enough to direct the minds of the jury to the respective rights of the parties under the facts of this case, and it therefore falls within the class of instructions so often condemned by the courts as serving no good purpose and only tending to confuse the jury. Every essential principle of law that this instruction contains is stated and applied to this case in the other instructions given for the defendant, and, therefore, it was not error to refuse this.

## II.

It is next insisted that counsel for the plaintiff made improper remarks to the jury in his closing argument. This was made one of the grounds for the motion for a new trial, and each side filed affidavits as to what was in reality said. The defendant's showing is that counsel said, in substance, that the defendant and his father kept a large store, were wealthy and able to pay damages and the plaintiff was a poor man. On the other hand the plaintiff's showing is that

counsel said the defendant had abundant means to employ detectives and others to pursue the plaintiff and to watch him daily and that the evidence clearly showed that such watch had been kept up, but that only on two occasions had they been able to find plaintiff, once when he was sitting in front of the store at Missouri avenue and the other when he was driving his old family horse out from Westport, and that when counsel for the defendant interrupted and objected to the statement that the defendant had abundant means and was able to employ such detectives and spies, the plaintiff's counsel insisted that the evidence clearly showed that such spying had been kept up and that it showed that they were people of ample means to employ such persons to watch the plaintiff, and that counsel did not say that defendant was able to pay damages, nor that his father was wealthy.

Counsel for defendant, however, claim that there is no evidence whatever to show that the defendant employed any detectives or watched plaintiff.

So far as the effect it would have upon a jury is concerned, there is no difference between what counsel is charged to have said and what he admits he said. There was no evidence to show that the defendant had employed detectives to watch the plaintiff, nor would such evidence have been admissible if it had been offered. It was not, therefore, a legitimate subject for comment or argument, and the court should have promptly restrained counsel and instructed the jury to disregard it.

But it is insisted that this error is not open to review in this court, because the bill of exceptions does not show that any such thing took place or that the defendant saved an exception to the action or rather non-action of the court; and that putting such matters in a motion for a new trial and supporting the contention with affidavits filed with the

motion for new trial and embracing them in the bill of exceptions does not make them a part of the bill of exceptions, and hence they can not be reviewed here. In other words, that in order to preserve objections of this kind, the facts in relation thereto should be stated in the bill of exceptions as a part of the proceedings that were had in the case, and can not be made a part of the record by affidavits filed in support of the motion for a new trial even if such affidavits are copied into the bill of exceptions.

This objection is well taken, and is the law as has been frequently declared by this court. [State v. Reed, 154 Mo. loc. cit. 126, and cases cited, to which list may be added, State v. Forsythe, 89 Mo. 672; Wilson v. Taylor, 119 Mo. 631; State v. Underwood, 76 Mo. loc. cit. 639; State v. Sanders, 106 Mo. 195; State v. Duncan, 116 Mo. 308; State v. Welsor, 117 Mo. 583; State v. Bulling, 105 Mo. loc. cit. 226; State v. McDaniel, 94 Mo. loc. cit. 306.]

The reason of the rule is that the argument of counsel to the jury is part of the proceedings in the case, an incident of the trial, just as much so as the testimony of the witnesses or any other step that is taken in the trial, and any objection to remarks of counsel must be made at the time the remarks are made and a ruling of the court obtained or asked thereon just as is required when a question to a witness is objected to, so that the error may be prevented or its effect corrected by the court, and a failure to do so at the time is fatal to the right to object to it afterwards, and hence all such matters must be set out in the bill of exceptions as constituting part of the trial. They can no more be made a part of the record by statements in the motion for new trial, supported by affidavits that such proceedings were had, than could statements in a motion for new trial, similarly supported, as to what a witness testified to or what the

weight of the evidence was, could be made a part of the record. For, as illustrated by this case, such affidavits are simply the affiants' statements as to what occurred during the trial and might be very conflicting, and are not, in any legal sense, the certificate of the trial court that such matters actually occurred, and such certificate of the trial court embraced in the record proper and such things as by the bill of exceptions the trial court has made a part of the record as matters of exception, can alone be considered by the appellate court. If the trial court refuses to embody a certificate in the bill of exceptions that such matters took place, the excepting party has the same remedy in this regard that he has when the trial judge refuses to sign a bill of exceptions which the objecting party thinks will correctly inform the appellate court of the actual proceedings had in the trial court, that is, to have a bill of exceptions signed by bystanders.

For this reason this alleged error is not before this court for review.

### III.

The defendant contends that the damages are so excessive that they indicate passion, prejudice or misconduct.

It is the province of the jury, in the first place, to assess the damages, and it is the duty of the trial court to grant a new trial or to order a *remittitur* if it thinks the damages excessive. [Chitty v. Railroad, 148 Mo. 64.] This court has many times granted new trials where the damages assessed were so great as to be explainable only upon the theory that the jury were guilty of passion, prejudice or misconduct, or where the verdict and judgment were manifestly unjust and shocked the judicial sense of right. As was pointed out in the Chitty case, these are but equivalent terms employed to express the same idea, that the ultimate

responsibility for every judgment rests upon the court of last resort, which is charged both by the Constitution and the statutes with the duty of supervising the judgments of all inferior courts and of affirming or reversing such judgments or of entering such judgments as the lower courts should have entered. It is with these principles in mind we approach the decision of this case. Defendant had a right to order the plaintiff to leave his premises, whether he had good reason for so doing or not, and it was the duty of the plaintiff to go. [State v. Reed, 156 Mo. l. c. 129; Morgan v. Durfee, 69 Mo. 469.] Defendant had the right to use all the force necessary, short of killing him, to compel plaintiff to do so. [State v. Reed, *supra*.]

If plaintiff assaulted the defendant, within the meaning of that term as correctly defined by the instructions above set out, the defendant had a right to defend himself, and in so doing he is not held to a more critical degree of care than those instructions specify. But defendant had no right to strike the plaintiff, if when ordered to leave the store he proceeded in an orderly manner, though at a slower pace than suited the defendant, to obey such order. The testimony of the two former cash boys tends to support the claim that the latter was the case here, while that of the defendant supports the former theory. This, therefore, presented a question of fact for the jury, and as the evidence was conflicting, that question is not open to review here. But in any event it is conceded by all the witnesses that the defendant struck the plaintiff but one blow, and that with his fist. There is no claim in the petition for punitive or exemplary damages, such as the Act of 1895 requires to be made (Laws 1895, p. 168). The testimony for the plaintiff tends to show he suffered severe and permanent injuries.

These were the facts which the record certifies to us the jury had before them, when they returned a verdict for

seven thousand dollars.  There is no evidence of any prior bad blood between the parties.  The one blow, whether justified under the circumstances or not, was not struck in malice, in its common sense, nor is there anything from which it may fairly be inferred that the defendant intended to inflict serious, permanent or cruel injury upon the plaintiff.

Taking all the facts and circumstances into consideration the verdict in this case shocks the judicial sense of right and creates a firm conviction in the mind of the court that the ends of justice will be best subserved by reversing the judgment and remanding the case to be tried again before another jury.  It is so ordered.  All concur.